[Civil No. 4117. Filed February 19, 1940.]

[99 Pac. (2d) 97.]

TOM REED GOLD MINES COMPANY, a Corporation, Appellant, v. P. H. BRADY, Appellee.

134

Mr. E. Elmo Bollinger and Mr. Louis L. Wallace, for Appellant.

Mr. Carl D. Hammond, of Kingman, Arizona, and Mr. J. O. Reavis, of Bakersfield, California, for Appellee.

ROSS, C. J.—Plaintiff, P. H. Brady, on November 9, 1934, leased of the defendant, Tom Reed Gold Mines Company, for one year from that date a portion of the Aztec Center mining claim, situated in the San Francisco Mining District, Mohave County, Arizona, agreeing to pay to the defendant a royalty on all ores extracted therefrom.

On September 23, 1937, plaintiff filed this action against the defendant. Thereafter, on November 15, 1937, he filed an amended complaint. It was alleged that the defendant evicted him from the leased premises on January 8, 1936, at which time there remained in ore chutes 1,680 tons of ore mined, extracted and removed from the premises, ready for shipment, of the value of $36,516.80, after deducting royalties due the defendant, and that on or about said date defendant converted said 1,680 tons of ore to its own use.

The complaint alleges, and the answer admits, that there were extracted from said premises additional ores, but that such ores had been settled for and were in no way involved in the controversy.

Defendant's amended answer, filed November 9, 1938, denies generally and specifically that there were 1,680 tons of ore, on January 8, 1936, in chutes ready for shipment, and alleges affirmatively that it had rendered full and complete settlement for all ores extracted from the premises by plaintiff.

Defendant as a counterclaim in a cross-complaint charges that plaintiff during the time he was mining on the Aztec Center unlawfully entered upon adjoining mining property of defendant (not included in the lease) and extracted therefrom and converted ores of the value of $5,000; that plaintiff's operations on the leased premises so weakened the supporting rocks and walls thereof that as a result, on February 2, 1936, a cave-in resulted, from which defendant suffered fur-

ther damages in the loss of ore of the value of $17,-737.38, and was compelled to expend the sum of $1,070 to reopen the 400-foot level of the Aztec.

In a second cause of cross-complaint and as a counterclaim, defendant charges that, due to the unskillful and unminerlike manner in which plaintiff prosecuted his work, a cave-in occurred on February 2, 1936, damaging defendant's property, including the Aztec Center and adjoining property, in the sum of $17,737.38, and that by reason thereof defendant had been compelled to expend the sum of $1,070 to reopen the 400-foot level of premises to serve and provide needs of its adjoining premises.

The lease is copied into the pleadings and by its terms plaintiff bound himself to do his mining in a skillful and minerlike manner and also to confine his operations within the boundaries of the leased premises.

Plaintiff's answer to the cross-complaint consists of an allegation "that said first cause of the cross complaint, and the whole thereof, is barred by the statute of limitation," and of general and specific denials.

The jury returned a verdict in favor of plaintiff fixing his damages at $18,682.38. From a judgment entered thereon and an order overruling a motion for new trial, defendant has appealed.

We will consider the assignments of error in the order which appears to us to be natural.

■ It is insisted that the preponderance of the evidence is against the verdict and, indeed, that there is no evidence to support the verdict. The rule in this jurisdiction is that if the evidence is in conflict on any issue submitted to the jury its verdict as to which way it preponderates will be accepted by the appellate court. The evidence is in sharp conflict as to the quantity of ore left in chutes ready for shipment when plaintiff, on January 8, 1936, was evicted from

the premises by defendant. Witnesses testified in behalf of plaintiff and their testimony sustained the affirmative, whereas the witnesses for the defendant denied that there was ore to exceed 100 tons. In such circumstances, the court will not undertake to weigh the evidence and determine which way it preponderates but will leave the matter as the jury found it.

The defendant asserts that ''the Court erred by rejecting testimony, by commenting upon evidence and by subjecting said witness (expert) to a severe cross-examination by the Court after the dismissal of said witness by counsel for both parties, as follows: . . . '' To sustain this assignment defendant sets out ten pages of testimony of an expert witness. We do not repeat it here but will say it consists in part of questions asked by the court and in part of questions asked by counsel and the answers of the witness. The assignment leaves to the court the duty to pick out from the ten pages of testimony what was ''rejected'' that should have been admitted, the portion thereof characterized as ''commenting,'' and to detect the severe cross-examination and wherein it was harmful. The duty of indicating what parts of the testimony or other action of the court was error devolves upon the party complaining. Many of the questions by the court do not bear the construction imputed and if any do counsel should have pointed them out.

Of course the trial judge's attitude as between litigants in his court should be one of complete impartiality, and while he may ask questions of witnesses he should be extremely careful not to give, either by intonation of voice or character of question, the impression to the jury that he leans to one side or the other. Ordinarily each side to litigation will insist upon its right to develop its case in its own way, and that is as it should be, but if it appears to the

court that further questions to a witness may give the jurors a better and clearer understanding of what they are to decide, we can see no impropriety in the court's asking such questions. An inspection of the evidence, made the basis of this assignment, does not, to our way of thinking, show that the court's actions were improper or harmful in any of the respects charged.

The court ruled in the course of the trial that the item of counterclaim of $5,000 for ores plaintiff is charged with wrongfully extracting from defendant's property, but outside of the leased premises, was barred by the two-year statute of limitations. Sec. 2059, Rev. Code 1928. The court also instructed the jury to the same effect. This action of the court is the basis of an assignment. The court submitted to the jury the other items of damages claimed by defendant as caused by reason of unskillful and unminerlike operations by plaintiff, although these items of counterclaim were set up in defendant's answer at the same time. This distinction doubtless was made by the court on the theory that the latter was a proper counterclaim, whereas the item of $5,000 for ore taken out of adjoining claims was not a proper counterclaim.

Plaintiff's action was commenced September 23, 1937, alleging conversion by defendant on or about January 8, 1936. The two-year statute of limitations had not run by three and one-half months when the complaint was filed. At the time defendant was sued by plaintiff, according to the pleadings, it had two valid subsisting causes of action against the plaintiff: One for damages for breach of the lease contract for bad and improper mining, and one for extracting and converting ores during such operations from an adjoining property. Defendant did not file its cross-complaint setting up counterclaims for either cause of action until more than two years had run (said cross-

complaint having been filed November 9, 1938). Of course defendant could not, after the statute had run, maintain an independent action against plaintiff for these wrongs. These same causes of action, however, it could use as defensive instruments when it was sued by plaintiff, and this was very properly recognized by the court's rulings and instructions as to damages suffered from unskillful operation.

■ We think the better rule is that:

"If, . ... a counterclaim or set-off is not barred at the commencement of the action in which it is pleaded, it does not become so afterward, during the pendency of that action; . . . " 24 R. C. L. 837, sec. 43.

"There is a conflict of opinion as to when a claim interposed as a set-off or counterclaim becomes barred by the statute of limitations. The better rule seems to be that, where defendant's claim in set-off was an existing debt not barred by the statute of limitations at the time plaintiff's action was begun, it will be a valid set-off, although the statutory period may have elapsed before the filing of the answer setting it up. . . . " 37 C. J. 1081, sec. 522.

■■ The question is, Does the item of $5,000 set up in defendant's answer meet the conditions of the law for a counterclaim against plaintiff's action for damages? Section 3785, Revised Code of 1928, reads:

*"Filing of counterclaim not admission; subject of counterclaim.* The pleading of a counterclaim is not an admission of the cause of action alleged in the complaint. The counterclaim must be an existing one in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and must be: A cause of action arising out of the contract or transaction pleaded in the complaint, or connected with the subject of the action; . . . "

This is a rather broad and comprehensive statute. It affords parties an easy, simple and expeditious remedy to adjust many of their differences in one action rather than in several. The counterclaim must

be an *existing* one in favor of the defendant and against the plaintiff, between whom a several judgment might be had in the action, and must grow out of the contract or transaction, or be connected with the subject matter of the action brought by plaintiff. We take it the counterclaim must be one *existing* at the time plaintiff's action is commenced. If the counterclaim is not barred at that time, it is a good defense.

One of the terms of the lease is:

"That the said Lessor, for and in consideration of the rents, royalties, covenants and agreements hereinafter reserved, and by the lessee to be paid, kept and performed, has leased, let and demised unto the said lessee for the purpose of mining within vertical planes drawn downward through exterior boundary lines, *saving and excepting all extra-lateral and other rights, privileges and appurtenances appertaining or belonging to adjoining and adjacent claims, portions of claims and properties;* . . . " (Italics ours.)

We think when plaintiff entered upon "adjoining and adjacent claims, portions of claims and properties" of the defendant and took from them and converted $5,000 worth of ore, if he did, he thereby breached the terms of his contract as much so as he did when he worked the leased premises unskillfully and in an unminerlike manner. As a consequence it was error for the court to take this item of counterclaim from the jury on the ground that it was barred or that it was not a proper counterclaim.

There are other rulings of the court assigned as error but their consideration is not necessary, since for the error noticed above the case must be sent back for a new trial.

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.

LOCKWOOD and McALISTER, JJ., concur.