[Civil No. 4346. Filed October 6, 1941.]

[117 Pac. (2d) 484.]

TOM REED GOLD MINES COMPANY, a Corporation, Appellant, v. P. H. BRADY, Appellee.

Mr. E. Elmo Bollinger, of Kingman, Arizona, and Mr. Frank H. Love, of Los Angeles, California, for Appellant.

Mr. Carl D. Hammon, of Kingman, Arizona, and Mr. J. O. Reavis, of Bakersfield, California, for Appellee.

ROSS, J.—This is an appeal by the Tom Reed Gold Mines Company, defendant, from a judgment for conversion in favor of P. H. Brady, plaintiff, and from an order overruling its motion for a new trial.

The claim of right to recover against defendant, as set out in the complaint, is that plaintiff, as the lessee of a portion of the Aztec Center lode mining claim, situate in the San Francisco Mining District, Mohave County, Arizona, from the defendant as lessor, had mined, extracted and removed from said leased premises, ready for shipping, 4,617.56 tons of ore and had shipped to defendant and had been paid for 2,937.56 tons thereof; that on January 8, 1936, there remained on the leased premises 1,680 tons of ore so mined and ready for shipping, and on said date defendant ejected plaintiff from the leased premises and, between that date and February 6, 1936, converted said 1,680 tons of ore, to plaintiff's damage in the sum of $36,516.80.

Defendant answered and cross-complained. In its answer it admitted that plaintiff had mined and delivered to it 2,937.56 tons of ore and that it had paid for same as stipulated in the lease; denied that plain-

tiff had mined, extracted or removed for shipping 1,680 tons of ore, or any other amount, except the 2,937.56 tons it had paid for, and that the alleged 1,680 tons of ore was of the value claimed or any other value.

In its cross-complaint defendant alleged plaintiff had entered upon and taken from its premises and converted $5,000 worth of ore not included in or covered by the leased premises but from defendant's premises adjacent thereto. For a second cause of cross-complaint defendant alleged plaintiff had breached his agreement to work the mine "in a proper, skillful and minerlike manner" and that, by reason thereof, a cave-in resulted in the leased premises on or about February 2, 1936, preventing further operations, to defendant's damage in the sum of $17,737.38 and compelling defendant to expend $1,070 in reopening the level closed by the cave-in.

On July 16, 1940, the day after entry of judgment on this verdict, plaintiff acknowledged partial satisfaction of said judgment in the amount of $705.99 and authorized and requested the clerk to enter such partial satisfaction.

One of the errors assigned is:

"II. That the judgment herein and the verdict upon which said judgment is based are not justified by the evidence, not sustained by the evidence, contrary to the evidence and contrary to law, . . . "

If by this assignment defendant expects this court to weigh the evidence where in conflict, we will have to disappoint it. The rule in such case is to accept the verdict as binding upon the court. *Tom Reed Gold Mines Co.* v. *Brady,* 55 Ariz. 133, 99 Pac. (2d) 97, 127 A. L. R. 906. However, under this assignment defendant asserts that there was no conflicting evidence as to the value of the ore alleged to have been converted. It is true, no witness for plaintiff testified as

to the value of such ore. It is also true that a witness for defendant testified he assayed six or seven samples of such ore and got values ranging from 70¢ to $2.80 per ton. The fact is, however, that the ore left by plaintiff in the stopes of the mine was broken from the same vein as was the ore which defendant accepted and paid for. There were very rich streaks in such vein, but the general mass therefrom was low-grade ore. Plaintiff had made 32 shipments to the defendant and been paid therefor.

■ When ore is converted, no one, except the party converting it and his agents, has first-hand knowledge of its money value. Acting upon that well-recognized fact, both the plaintiff and cross-complainant relied upon the average value of the 32 shipments of ore to defendant, excepting three shipments included therein which were made up of high-grade ore. The defendant, in an effort to prove its damages by reason of ores it claimed plaintiff had taken from its property adjacent to the leased premises and converted, asked W. B. Phelps, an expert witness, "And what, if you know, was the value of that block of ore?" and was answered:

"We arrived at the value by taking all of the Brady shipments and striking out the three high-grade shipments and averaging the remaining shipments, which gave an average value of $20.34."

In other words, as it was, in the circumstances, impossible for either plaintiff or cross-complainant to prove values, because the ore had been destroyed, they both sought to establish their loss in the same way, to wit, by adopting the known average value of ores taken from the same vein nearby. As we shall later see, this was allowable.

■■ Under this assignment the defendant claims the preponderance of the evidence shows there was no substantial tonnage left in the stopes when plaintiff

was ejected on January 8, 1936. Plaintiff's witnesses testified that the tonnage left in the mine was 1,680 to 2,000, and defendant's witnesses' estimates were from 100 to 300 tons. It was for the jury to determine which side had produced the preponderance of the evidence. They were the judges of the weight of the testimony and credibility of the witnesses.

It is next claimed under this assignment that any damages suffered by plaintiff were the direct result of his manner of conducting his mining operations. That issue was submitted to the jury and was decided against defendant.

Then it is said the verdict was a compromise or quotient verdict because it is exactly one-fourth of the amount sued for. There is no evidence whatever except defendant's mathematics to support this assertion. If we decide it was a quotient verdict, it will have to be on the coincidence that four times the verdict equals the amount sued for. That fact alone should not impeach the jury's verdict. The jury, in its effort to reconcile the conflicts as to tonnage and value, might very well have arrived at the conclusion that the damages were not as great as claimed by plaintiff but considerably greater than defendant would allow. We prefer to accept the verdict as the considered and honest judgment of the jury.

At the close of plaintiff's case, the defendant, upon the various grounds set forth in the preceding assignment (and one or two additional grounds), moved for dismissal of the jury and for judgment in its favor. This was denied and the ruling is assigned as the third error. If we are right in our ruling on Assignment No. II, *supra*, then this assignment presents no question for us to decide. It is simply asking this court to review the evidence and substitute its judgment, as to the weight of the evidence and credi-

bility of the witnesses, for that of the jury, which we may not do.

We now consider Assignment No. I, and it is upon it that the defendant mostly relies for a reversal. The court gave the following instruction, which it is claimed ''was highly prejudicial to defendant and deprived defendant of a fair trial . . . '':

''The jury are instructed that in an action against a mining company to recover for ore mined, it is possible and competent for the plaintiff, who is not in possession of said ore, to show the value of similar ore from the same vein nearby.''

The reasons assigned for complaining of said instruction are: That it does not (a) state the law, (b) place the burden on plaintiff to prove ownership and value of ore; that it (c) charges the jury as to matters of fact and the weight of certain given evidence, (d) assumes the existence of essential disputed facts to plaintiff's right of recovery, (e) withdraws from the jury material questions of fact, (f) tends to single out and make prominent certain isolated facts, (g) shifts the burden of proof of value of ore from plaintiff to defendant, (h) emphasizes and singles out a suit against a mining company, and (i) ignores value and stresses volume.

All that the instruction does is to advise the jury that evidence of the value of similar ores taken from the same vein nearby was competent to prove the value of the ore the defendant is claimed to have converted. This was the best evidence of value plaintiff could secure since, according to his theory, the ore had been taken from him by defendant and destroyed. The instruction follows a rule of evidence that was announced in *Montana Mining Company* v. *St. Louis Mining & Milling Company,* 9 Cir., 183 Fed. 51. See, to the same effect, *Ward* v. *Massachusetts Bonding & Insurance Company,* 67 Cal. App. 792, 228 Pac. 363.

In these cases, however, it was not controverted that the defendants got the ore claimed to have been converted. That fact differentiates them from this case, in this, that here defendant denies ever getting any ore belonging to plaintiff. However, the court instructed the jury in another place that:

"If there is a fair preponderance of the evidence in favor of plaintiff's contention as to such conversion and the damages resulting therefrom, then the plaintiff should prevail; . . . The burden is upon the plaintiff to prove the conversion, and the damages claimed by him. . . ."

We think the jury was not misled by these instructions into considering evidence of the value of ores from the same vein nearby until it had determined that there was a conversion as alleged in the complaint. We fail to see wherein the instruction was prejudicial to defendant or deprived it of a fair trial. Every instruction must be an exemplification of the law under the facts as presented, and we think the instruction correctly stated the law applicable to plaintiff's contention.

Defendant did not offer any instruction on the competency of such evidence, although, as heretofore stated, it did offer evidence of the value of ores from the same vein nearby to prove the value of ores belonging to it and which, in its cross-complaint, it claimed plaintiff had converted. If it was dissatisfied with plaintiff's instruction, it was at liberty to request an instruction incorporating the law according to its views. Another thing, we feel the defendant must have been well satisfied with the instruction, for it was given in identical language in the former trial of the case (*Tom Reed Gold Mines Co.* v. *Brady, supra*), and, although defendant appealed from the judgment therein and assigned many errors, it failed to assign such instruction as error. If defendant had

obtained a judgment against the plaintiff on its cross-complaint, we are satisfied it would have found no fault with this instruction.

■ The fourth and last assignment is that the court erred in overruling defendant's motion for a new trial on the ground of misconduct of trial juror Ed LaFerriere. The misconduct of LaFerriere, as shown by supporting affidavits, consisted of his qualifying as a juror when he was financially interested in seeing Brady win his suit against the defendant. The supporting affidavits were controverted by the affidavits of the juror and the plaintiff Brady, and the trial court ruled against the movant and denied the new trial. We think this disposes of that point under the ruling of the recent case of *Wilson* v. *Wiggins,* 54 Ariz. 240, 94 Pac. (2d) 870. See, also, *Diller* v. *Northern California Power Co.,* 162 Cal. 531, 123 Pac. 359, Ann. Cas. 1913D 908.

The judgment of the lower court is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.