EAGLE SAVINGS & LOAN ASSN., APPELLEE, *v.* WEST ET AL., APPELLEES; THE PENKER REALTY CO., APPELLANT.

(No. 6181—Decided September 28, 1942.)

*Mr. Stewart S. Cooper* and *Mr. W. Ray Skirvin,* for appellee, Sophia Hucke.

*Mr. Louis Weiland,* for appellees, Edward L. Raisbeck and J. Clarence Raisbeck.

*Messrs. Freiberg & Simmonds* and *Mr. Jerome Goldman,* for appellant.

MATTHEWS, P. J. This action was instituted in 1932 by a first mortgagee against the mortgagor, a second mortgagee and several successive grantees of the mortgaged premises to foreclose the mortgage and to recover a personal judgment against the mortgagor upon the note secured by the mortgage and against the grantees upon provisions in their respective deeds,

whereby they assumed and agreed to pay the mortgage debt.

The first mortgage has been foreclosed, the property sold, and the debt due plaintiff paid and satisfied. The plaintiff has no interest in the result of this appeal. The issue is between codefendants.

On January 21, 1933, the defendant Sophia Hucke filed an answer and cross-petition. In her cross-petition, she set forth that her codefendants Edward L. Raisbeck, J. Clarence Raisbeck and The Penker Realty Company were subsequent grantees of the mortgaged premises and that in the deeds to them respectively they had separately agreed to assume and pay the second mortgage of which she was the owner. The agreement of The Penker Realty Company to assume was alleged to have been contained in the deed of Edward L. Raisbeck to it.

In March 1933, Edward L. Raisbeck filed an answer and cross-petition and, not denying the assumption by him, prayed as against The Penker Realty Company that it be required to indemnify him against loss on account of his agreement to assume the Hucke mortgage. And in the same month The Penker Realty Company filed its answer to these pleadings. It was after issue was joined by these pleadings that the cause was heard and the foreclosure of the first mortgage was decreed and the property sold. However, the issues between the codefendants were reserved for future consideration and determination.

Early in 1942, the case was set for trial of these issues between the second mortgagee and the grantees. The defendant The Penker Realty Company thereupon obtained leave to and filed an amended answer and cross-petition to the pleadings of its codefendants. In this amended answer and cross-petition seven separate and enumerated items, each captioned as a

"defense," were set forth. In the "second defense,"
The Penker Realty Company alleged that there was
no consideration for its assumption of the second mort-
gage. In the "third defense," it alleged that:

"This answering defendant, The Penker Realty
Company, says that it acquired the property de-
scribed in plaintiff's petition and in defendant Sophia
Hucke's cross-petition pursuant to a contract made
between this answering defendant and Edward L.
Raisbeck, under which said The Penker Realty Com-
pany was to lease with privilege of purchase to said
Edward L. Raisbeck certain real estate then owned
by this answering defendant, and in payment of said
lease with privilege of purchase, said Edward L. Rais-
beck was to make certain payments to this defendant,
and in part payment thereof transfer to this answering
defendant said Edward L. Raisbeck's equity in the
property described in plaintiff's petition and in de-
fendant Sophia Hucke's cross-petition; that said prem-
ises were to be conveyed to this answering defendant
subject to the mortgages thereon, and that this an-
swering defendant was not to assume or agree to pay
any of such mortgages.

"This answering defendant says that if in the deed
to said premises language was used casting upon this
answering defendant the obligation of assuming and
agreeing to pay any mortgages on said premises, then
such language was included therein by mutual mis-
take, and was not the true intention of the parties.

"Wherefore, this answering defendant asks the
court to reform said language to express the true in-
tention of the parties, which was that this answering
defendant was to take said property only subject to the
mortgages but not to assume or agree to pay any of
them."

The amended answer and cross-petition closed with
a prayer for the dismissal of the cross-petitions against

it and that it go hence without day with its costs.

On April 10, 1942, the defendants Edward L. Rais-beck and J. Clarence Raisbeck demurred to the second and third defenses. This demurrer does not set forth the grounds of the demurrer, but the authorities cited in the footnote to the demurrer show that the intention was to raise the issue of whether the statute of limitations did not preclude The Penker Realty Company from asserting whatever right it might otherwise have had based on the allegations of these defenses.

The court sustained this demurrer.

The entry does not show the ground or grounds upon which the court acted. The entry does recite that The Penker Realty Company declined to plead further, and that, thereupon, the court ordered "That the claim of The Penker Realty Company for reformation set forth in said third defense is hereby dismissed, and judgment is hereby rendered in favor of said demurrants against said The Penker Realty Company on said claim for reformation."

Within twenty days thereafter, The Penker Realty Company filed a notice of appeal to this court.

The second mortgagee filed a motion to dismiss this appeal on the ground that the order appealed from was not a judgment or final order, and that, therefore, this court has no jurisdiction to pass upon its validity at this time. Upon this motion being called for hearing, it was agreed that both the jurisdictional question and the merits should be presented, so that in the event we should determine that we had jurisdiction, we could proceed to determine the merits of the appeal.

Is the order appealed from a final order? As this strikes at the power of the court to proceed, it is not material how or by whom the question was raised. If the litigants did not raise it, the court would *sua sponte*.

It is not contended that the order in so far as it sus-
tains the demurrer to the "second defense" is a final-
ity and a predicate for jurisdiction of this court, but
it is asserted with confidence that in so far as it sus-
tains the demurrer to the "third defense" it does have
that quality. It is said that while the pleader has
captioned these allegations as a "third defense," they
state a cause of action for the reformation of a writ-
ten instrument, and that they end with a prayer for
that affirmative relief, and that, therefore, the court
was right in rendering judgment thereon on the refusal
of The Penker Realty Company to plead further.

On the other hand, it is pointed out that the matter
alleged relates to a part of the very transaction upon
which liability of The Penker Realty Company is as-
serted and the sole purpose of the "third defense" is
to defeat that liability and that therefore it accurate-
ly fits the description of a defense.

There is no doubt that under the old systems the
parties would have been bound by the written integra-
tion of their agreement. In an action at common law,
the second mortgagee could have declared upon the
contract as written and could have successfully re-
sisted all attempts of the defendant to prove that the
writing did not express the actual agreement. In time
this became crystalized into the rule of evidence that
when parties have reduced their agreement to writing,
no prior or contemporaneous oral negotiations or
agreements may be received in evidence to vary, add
to, or take from the terms of the writing. Such ex-
traneous oral matter was neither a defense nor a cause
of action. It did not affect the jural relations of the
parties in the slightest. It was a harsh rule.

The cause of the rise of chancery jurisdiction was
the rigidity and harshness of the law as applied by the
common-law judges. Appeals to the king against the

injustice were made. He referred the appeals to his chancellor to determine whether an injustice had been done. In time, a court developed presided over by the chancellor administering rules to relieve against the harshness of the common law. This rule, excluding all prior and contemporaneous oral agreements to vary a written agreement, was one of the rules that the chancellor found worked a hardship when the writing failed to express the actual agreement. The chancellor did not, of course, assume to change the rule of the common law against varying a written agreement by oral evidence, but where he found that the writing did not express the actual agreement, he required the parties to reform the writing so as to make it conform to the actual intent. This was and is the suit in chancery for reformation of a written contract, and in aid of this remedy the chancellor would enjoin the defendant from proceeding at law on the contract as incorrectly evidenced by the original writing. Thus, as a result of these appeals to the chancellor, two systems of jurisprudence—common law and equity—arose, the one modifying the other, and for hundreds of years they were administered by tribunals independent of one another, and through different systems of pleading and procedure. This dual system existed in Ohio in its early history and continued in somewhat modified form until the adoption of the Code of Civil Procedure in 1853.

It was one of the purposes of the Code of Civil Procedure to merge law and equity into one system administered by one system of courts under a simplified form of pleading and procedure. It was provided that there should be but one form of action and that one action should be known as a civil action in which causes of action could be joined without any regard as to whether they had been theretofore called legal

or equitable, provided they met the test of joinder imposed by the Code itself.

And in defending against this civil action, a defendant was given the right to allege in his answer as many defenses as he had without regard to whether they were legal or equitable or both. Section 11315, General Code.

And, furthermore, if the defendant had any cross-demand by way of set-off or counterclaim, he was given the right to assert it in his answer. The Code defined a counterclaim to be "a cause of action existing in favor of a defendant against a plaintiff or another defendant, or both, between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action." Section 11317, General Code.

And by Section 11321, General Code, it was provided that when cross-demands existed under such circumstances that when one was asserted, the other could be pleaded against it, they should be deemed compensated to the extent that they equalized one another, that is, as we understand, the one extinguished the other.

And all pleadings were to be in ordinary and concise language without resort to artifice or fiction.

By these provisions and many others, the Legislature sought to sweep aside the technicalities of the two old systems and substitute for them a single simplified system, under which the actual rights of the parties would be enforced in one action. It succeeded in large measure, and the respects in which it failed have resulted not so much because of any defect in its work, but from the tendency of the lawyers of the time to carry over the rules of interpretation under

the old system and apply them to the new in express disregard of the Code itself that it should be given a liberal interpretation.

Now then, how should a situation be treated under the new system, where under the old an action in one court could be nullified by instituting another action in another court? To be specific, where an action is filed on a contract as shown by the terms of a writing which does not state the actual agreement, must the defendant go through the idle form of asking a reformation of the writing before he is permitted to introduce oral evidence of the actual terms of the contract? He could have protected himself in this way under the old system. Is the new no better? Common sense would seem to dictate that it would be sufficient to set forth the facts destroying the plaintiff's basis for relief in ordinary and concise language, without asking for a reformation (that never actually takes place anyhow) when all he wants is to defeat the plaintiff's action.

This whole subject is discussed at considerable length by Pomeroy both in his work, Equity Jurisprudence, and in his work, Code Remedies.

In 4 Pomeroy's Equity Jurisprudence (5 Ed.), 989, Section 1369, the author says:

"It is important to determine, in the first place, the nature and meaning of an 'equitable defense.' A defense is a right possessed by the defendant, arising from the facts alleged in his pleadings, which defeats the plaintiff's cause of action or claim for the remedy demanded by his action. An equitable defense is such a right, which exists solely by virtue of equitable doctrines, and which was originally recognized by courts of equity alone. The right constituting an equitable defense may be one which, when consummated and enforced, confers upon the defendant some affirmative

equitable relief clothing him with a paramount *legal* title or estate, and thus defeating the plaintiff's claim; or it may be one which is purely defensive, which entitles the defendant to no affirmative relief, and which simply operates to bar the plaintiff's action. The general term 'equitable defense' plainly includes both of these classes.''

See, also, Pomeroy's Code Remedies, 46, Section 27, and on the question of the appealability of a decision on a cross-petition, 2 American Jurisprudence, 896, Section 76.

Counsel rely on *Bryant* v. *Swetland*, 48 Ohio St., 194, 27 N.E., 100, in support of a contrary conclusion. That was an action upon a written contract entered into more than ten years previously. The defendant alleged that the writing did not express the true intent and prayed that it be reformed so as to relieve him of liability. The plaintiff pleaded the statute of limitations to this pleading. The court held as stated in the second paragraph of the syllabus that:

''Where such reformation is sought by answer filed in an action brought to enforce the instrument, the plaintiff may set up the statute in bar, when the cause of action for the reformation accrued more than ten years before the commencement of the action in which the answer is filed.''

And at page 205, the court said:

''The Court of Common Pleas found the issues for the plaintiff, and rendered judgment in his favor. This was an adjudication adverse to the defendant's claim for the reformation of the instrument, from which he might properly appeal.''

While this case did not involve the question of jurisdiction or the finality of any order, counsel did present the distinction between a defense and a cross-claim and the court seems to have considered that this

right to a reformation must be still treated as a cause of action as distinguished from a mere defense, not-withstanding the provisions of the Code of Civil Procedure. It accordingly held, that as more than ten years had elapsed at the time the plaintiff sued on the contract as written, the defendant could not defeat recovery by the claim of mutual mistake in reducing the contract to writing. Thus, the plaintiff by delaying the bringing of the action on the contract for more than ten years effectually closed the door against proof of the actual contract and succeeded in recovering on a contract that had no existence in fact. This resulted from the action of the court in treating the plaintiff's and defendant's assertions as though the Code of Civil Procedure had never been passed.

If the order sustaining the demurrer and dismissing the "third defense" becomes a finality upon failure to appeal within twenty days thereafter, the reasons against an appeal before the determination of the other issues become inadequate, but, if the validity of the ruling on the demurrer would be open to review upon an appeal taken after the decision of all the issues, then the reasons against splitting and partial appeals would seem to be controlling.

If The Penker Realty Company's allegations of mutual mistake must be considered as though they presented a cause of action and not a mere defense, then the logic of *Bryant* v. *Swetland, supra,* would require us to hold that the procedural law applicable to independent causes of action must be applied and that an order of dismissal on demurrer must be regarded as a final order from which an appeal must be taken, if at all, within twenty days thereafter.

In view of the fact that The Penker Realty Company by praying for a reformation treated its pleading as calling for affirmative relief, and that the court

so considered it, we have concluded to concur in that view without committing ourselves to the proposition that where a defendant sets forth a mutual mistake in the written contract sued upon without praying for reformation, such allegations are insufficient as a defense, or that an order passing upon them is a final order.

We, therefore, overrule the motion to dismiss the appeal and pass to the questions presented thereby.

The demurrer to the second defense was properly sustained. The issue of consideration was raised by the denial and the affirmative allegations of no consideration were surplusage. It was and is incumbent on the plaintiff, in this case, the second mortgagee, to prove consideration for the promise to pay the mortgage. The burden is upon her. It is an element of her cause of action. Of course, the transfer of the title might constitute the consideration as was decided in *Cleveland Trust Co.* v. *Elbrecht, Trustee,* 137 Ohio St., 358, 30 N. E. (2d), 433.

It is argued that the "third defense" is barred by the statute of limitations, and that the demurrer was properly sustained on that ground. It has already been observed that the demurrer sets forth no ground. That would seem to constitute a waiver of this ground (Section 11310, General Code), but laying this aside, we consider the question of whether The Penker Realty Company is barred from relying on mistake in reducing the contract to writing. Counsel say that *Bryant* v. *Swetland, supra,* so decides. But, in that case, the statutory period had run when the action was begun in which the defendant sought to rely upon the mistake and the court limited its decision to cases where the cause of action for reformation accrued more than ten years "before the commencement of the action in which the answer is filed." No claim is made in this

action that the statute had run when this action was commenced. *Bryant* v. *Swetland,* is therefore, inapplicable.

This case falls in the category of cases in which the statute had not run when the action was commenced, but had run at the time of the filing of the pleading alleging the defense, counterclaim or set-off.

We had this question before us in the case of *Bronson* v. *Mau,* 31 Ohio Law Abs., 653, 655, and speaking through Judge Ross, we held:

"The petition in the instant case was filed five years —eleven months—twenty-four days after July 1st, 1932. The answer and cross-petition of the defendant was not filed until October 20th, 1938, after more than six years from the date set by the defendant as the time when his cause of action arose.

"The cause of action of a defendant, still in force at the time of filing a petition against him, though barred by the statute of limitations, when the cross-petition is filed, may still be asserted against the plaintiff in spite of such fact. *McEwing* v. *James,* 36 Ohio St., 152; *Bryant* v. *Swetland,* 48 Ohio St., 194; *Continental Automobile Mutual Ins. Co.* v. *Morton,* 23 Ohio Law Abs., 311; *Markley* v. *Michael,* 8 Ohio Dec. Rep., 269; 6 Weekly Law Bulletin 832; 3 American State Reports, footnote, page 63; 25 Ohio Jurisprudence, 575."

See, also, 34 American Jurisprudence, 57 *et seq.,* Section 63. Indeed, the weight of authority goes further and holds that the use of a cause of action as a shield or defense is not precluded, even though the statutory period has run against its use for affirmative relief at the time of the filing of the action in which it is used. *Peterson* v. *Feyereisen,* 203 Wis., 294, 234 N. W., 496, 73 A. L. R., 571, and note.

We adhere to our conclusion in *Bronson* v. *Mau, supra.*

The judgment is reversed and the cause remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

Ross, J., concurs.