Argued September 7, reversed and remanded October 25, 1961

# LEWIS *v.* MERRILL
### 365 P. 2d 1052

*Gerald H. Robinson,* Portland, argued the cause for appellant. With him on the brief was Stephen King.

*Ben T. Gray,* Portland, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY and LUSK, Justices.

LUSK, J.

The plaintiff brought an action against the defendant to recover damages for assault and battery. The defendant filed a counterclaim based on the same incident as that alleged in the complaint charging that the tort was committed against him and seeking damages for his injuries. The plaintiff in his reply alleged that the counterclaim was barred by the statute of limitations. To this reply the defendant filed a demurrer which was sustained by the court. The jury returned a verdict in favor of the defendant on his counterclaim for $250 compensatory damages and $1,500 punitive damages. From the ensuing judgment plaintiff has appealed.

The alleged assault and battery occurred on the twenty-seventh of March, 1958. The complaint was filed on March 16, 1960, and the defendant was served on March 18, 1960. The answer containing the counterclaim was filed on March 29, 1960. Both the complaint and counterclaim alleged that the incident occurred "on or about March 27, 1958."

The action is governed by the two-year statute of limitations, ORS 12.110 (1), and would have been barred after March 27, 1960. Defendant's answer, therefore, was filed two days after the expiration of the statutory period, but the cause of action stated in the counterclaim was not barred at the time the complaint was filed. We are, therefore, called upon to determine whether, in these circumstances, the statute of limitations should be held to have run against the counterclaim. This is a new question in this state.

■ Preliminarily, we notice the contention of the defendant that the plaintiff waived the defense of limitations by setting it up in the reply instead of demurring to the counterclaim. The argument assumes that the fact that the action was barred appears on the face of the pleading and the decisions of this court which hold that when this is so the objection may be taken only by demurrer are relied on. *Dixon v. Schoonover*, 226 Or 443, 359 P2d 115, 117, and cases there cited. This, however, is an erroneous assumption because, as Judge Deady said in *Conroy v. Oregon Construction Co.*, 23 F 71, 73 (C. C. D. Or 1885), an allegation that something occurred " 'on or about' a certain day, is not an averment that it occurred on any distinct day or time. The actual day or time may be either before or after the one stated with an 'on or about.' " It was there-

fore held in a personal injury action in which the complaint alleged that the injury was sustained "on or about" a certain day that a demurrer to the complaint based on the statute of limitations would not lie because it did not appear on the face of the complaint when the right of action accrued.

■ We recognize, of course, that there are limits beyond which the courts will not go in the application of this rule of construction to particular cases. Thus, as the court said in *Newcomer v. Ament,* 214 Iowa 307, 242 NW 82: "No date in July is 'on or about' the last days of October." See, also, *Crawford v. Arends,* 351 Mo 1100, 176 SW2d 1; *Render v. Commonwealth,* 206 Ky 1, 266 SW 914. Without attempting to determine the allowable latitude that may be given the phrase, it is certain that "on or about March twenty-seventh" includes at least until the end of March; hence, the fact that the statutory period for bringing the action had run did not appear on the face of the counterclaim and the question was properly raised in the reply.

This court has held in a number of cases, of which *Dixon v. Schoonover,* supra, is the most recent, that, notwithstanding the running of the statute of limitations, a counterclaim may be employed defensively, that is by way of setoff or recoupment, either to defeat altogether the plaintiff's action, or diminish the amount of his recovery. These cases, however, are not controlling because they do not involve the right of the defendant to recover an affirmative judgment and were decided without regard to the question whether the cause of action stated in the counterclaim was barred at the time that the plaintiff filed his action.

The Oregon statute provides that the answer of the defendant shall contain "a statement of any new matter constituting a defense or counterclaim." ORS 16.290 (2) (b). ORS 16.300 provides in subsection (1):

"The counterclaim mentioned in subsection (2) (b) of ORS 16.290 must be one existing in favor of the defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

"(a) A cause of action arising out of the contract or transaction set forth in the complaint, as the foundation of the plaintiff's claim.

"* * * * * *"

In *Sturtevant v. Dowson et al.,* 110 Or 155, 163, 219 P 802, 222 P 294, we held that the language of the section last quoted was broad enough to cover causes of action arising after as well as those existing at the time of the commencement of the action. We are concerned in this case, however, only with a cause of action which was in existence at the time the complaint was filed and our decision is limited to such a case.

■ While there is a difference of opinion on the question, the majority of the courts hold that a counterclaim based on a cause of action which is not barred at the time of the commencement of plaintiff's action is not thereafter barred because not pleaded before the expiration of the full statutory time. 34 Am Jur 205, Limitation of Actions, § 249; 54 CJS 342, Limitations of Actions, § 285; Annotation, 127 ALR 909. The following cases support this view: *Perkins v. West Coast Lumber Co.,* 120 Cal 27, 52 P 118; *McDougald v. Hulet,* 132 Cal 154, 64 P 278;

*Whittier v. Visscher,* 189 Cal 450, 209 P 23; *Union Sugar Company v. Hollister Estate Co.,* 3 Cal 2d 740, 47 P2d 273; *Stillwell v. Bertrand* (1860) 22 Ark 375; *Tom Reed Gold Mines Co. v. Brady,* 55 Ariz 133, 99 P2d 97, 127 ALR 905; *Denton v. Detweiler,* 48 Idaho 369, 282 P 82; *Eve v. Louis* (1883) 91 Ind 457; *Zink v. Zink,* 56 Ind App 677, 106 NE 381; *Grevenstuk v. Hubeny,* 216 Ind 379, 24 NE2d 924; *Turnbull v. Watkins* (1876) 2 Mo App 235; *Concrete Steel Co. v. Reinforced Concrete Co.* (C. A. Mo 1934) 72 SW2d 118; *Rollins v. Horn* (1863) 44 NH 591; *Brumble v. Brown* (1874) 71 NC 513; *Parsell v. Essex,* 15 Misc 2d 617, 181 NYS2d 1019; *Herbert v. Day,* 33 Hun (NY) 461; *National Retailers Mut. Ins. Co. v. Gross,* 142 Ohio St 132, 50 NE2d 258; *Eagle Sav. & L. Assn. v. West,* 71 Ohio App 485, 496, 50 NE2d 352; *Bryant v. Sweetland et al.,* 48 Ohio St 194, 210, 27 NE 100. In Wisconsin the majority rule has been incorporated into a statute. See *Preston v. Thayer,* 127 Wis 123, 128, 106 NW 672.

We have not cited cases involving setoffs or recoupments though the reasoning in some of these would seem to be fully applicable to counterclaims. See *McEwing v. James* (1880) 36 Ohio St 152; *Markley v. Michael* (1881) 8 Ohio Dec Reprint 269; *Williams v. Lenoir* (1875) 67 Tenn 395 (mutual accounts, affirmative judgment in favor of defendant for excess sustained); *Railroad v. Parks,* 86 Tenn 554, 8 SW 842.

In *Perkins v. West Coast Lumber Co.,* supra, an attorney brought an action to recover upon a special contract for professional services rendered to the defendant. Over four years after the commencement of the action the defendant pleaded a counterclaim for damages based on bad advice given him by the

plaintiff. The defendant's claim was not barred at the time the action was commenced, but if he had brought an independent action it would have been barred at the time the answer was filed. The California court held that the counterclaim was not barred, saying:

"The claim was not barred when the complaint was filed, and that fact allows it to be set up as a counterclaim, though if standing alone the statute would run against it before the answer was filed. As to a counterclaim, the filing of the complaint suspends the running of the statute of limitations. By section 438 of the Code of Civil Procedure, it is held that the answer of a defendant may set up a counterclaim 'existing at the commencement of the action.' Lyon v. Petty, 65 Cal. 322, fully supports this view. In answer to this position, respondent claims that it is only in actions arising upon contract set up as counterclaims that the statute of limitations is held in abeyance by the filing of the complaint. We are satisfied that the principle applies also to counterclaims of the character here relied upon." 120 Cal at 28.

The provision of our counterclaim statute relating to a cause of action arising out of the transaction set forth in the complaint is similar to that of California, although at the time of the decision in *Perkins v. West Coast Lumber Company,* supra, it was provided that the counterclaim must have been in existence at the time of the commencement of the action. This provision was eliminated by amendment in 1927, 44 Cal Jur 2d 614, Setoff and Counterclaim, § 4; *Western Pipe and Steel Co. v. Tuolumne Gold D. Corp.,* 63 Cal App 2d 21, 146 P2d 61, thus bringing the California statute into harmony with ours, as construed in *Sturtevant v. Dowson et al.,* supra. In

*Union Sugar Company v. Hollister Estate Co.,* supra
(1935), 3 Cal 2d at 746, the court held that the amend-
ment "did not affect or destroy" the rule of the
*Perkins* case.

The Arizona case of *Tom Reed Gold Mines Co. v.
Brady,* supra, and the Missouri case of *Concrete Steel
Co. v. Reinforced Concrete Co.,* supra, were both de-
cided upon the construction of statutes similar to that
of California before its amendment and upon reason-
ing similar to that of the California court in the
*Perkins* case.

So, also, in *Herbert v. Day,* supra, a case arising
on contract with a counterclaim for damages sus-
tained by reason of the neglect of the plaintiff to
perform his contract in accordance with its terms,
the appellate division of the New York Supreme
Court, in sustaining the counterclaim, which was not
barred at the time the action was commenced, but
would have been as an independent action at the time
the answer was filed, said:

> "The provisions made for the allowance of
> counter-claims connected with or growing out of
> the subject of the action, support the construction
> which has already been given to the statute pre-
> scribing the times within which actions must be
> commenced. (Code Civ. Pro., § 501 sub. 1.) For
> without any restraint whatever, they are allowed
> to be relied upon by way of defense whenever the
> subject with which they may be connected is made
> the foundation of an action. No other circum-
> stance has there been required to entitle the de-
> fendant to present his counter-claim than that it
> is connected with or arises out of the contract
> forming the foundation of the action. And as that
> was its character in this instance, the defendant
> was legally entitled to rely upon it for his pro-
> tection as long as the plaintiffs could invoke the

aid of the same agreement to establish their demand against him." 33 Hun (NY) at 464-465.

It would not be profitable to review the decisions on the other side of this question. They are collected in 127 ALR 914 et seq. Some of them are distinguishable because of the provisions of the counterclaim or limitation statutes in the particular jurisdiction. Others cannot be distinguished, but, in our opinion, the better rule is that where a counterclaim arises out of the transaction alleged in the complaint and is in existence at the time that the complaint is filed and is not then barred by a statute of limitations, it will not be barred by the running of the statutory time thereafter, but the statute will be suspended until the counterclaim is filed. Such a rule is conformable to a fair interpretation of our counterclaim statute and, we believe, is not opposed to the policy against "the enforcement of stale claims," *Herbert v. Day,* supra, 33 Hun at 464, so long as the rule is confined to cases in which the cause of action stated in the counterclaim arises out of the same transaction as that alleged in the complaint. The present case affords an excellent illustration of the justice of this view, for the very same evidence here which would support a defense would also support the counterclaim. This is also true of actions for damages growing out of a collision between motor vehicles in which the only evidence to support a counterclaim which would not be relevant to a pure defense would be the evidence as to the defendant's damages. The reluctant litigant in a case of this character should not be held to have lost his right to recover damages for a wrong done him simply because his adversary postpones commencement of an action until the statute of limitations is about to run out.

The court did not err in sustaining the demurrer to the reply.

The plaintiff requested the court to instruct the jury as a matter of law that the defendant was a trespasser in the plaintiff's home at the time of the assault. The court submitted this question to the jury and the ruling is assigned as error.

A brief summary of the evidence bearing upon the point is necessary. The plaintiff, Doctor William D. Lewis, a dentist living in the city of Portland, is the former husband of the defendant's cousin. They were divorced on March 19, 1958. The defendant, Parley Merrill, III, and his wife lived next door to the plaintiff. For reasons not necessary to be recounted, a feud had developed between the parties and the record is replete with incidents revealing the animosity of the plaintiff toward the defendant.

Doctor Lewis had listed his house for sale and on the evening in question Paul E. Powers, a real estate salesman, called upon him for the purpose of procuring his signature to an earnest money receipt containing an offer to purchase the property. The signature of the former Mrs. Lewis was also needed and Doctor Lewis telephoned Merrill and asked him to call Mrs. Lewis and have her call him (Dr. Lewis). This was about 9:30 in the evening after Merrill had gone to bed. Lewis testified that his request was met with abusive language. He testified as follows as to what occurred after the telephone conversation ended:

> "By the time I hooked the back screen door, which I have to let the dachshund dogs run in and out, and started to go in the front room, he [Merrill] was at the front door."

He said to Merrill: "Stay out. If you have got some-

thing to settle, get yourself a lawyer." The transcript proceeds:

"Q Then what was said?

"A Well, I don't remember what he said, but he just kept coming right on in.

"Q Then what took place?

"A Well, he started after me violently. I hit him across the neck with the cane (motioning). Not over the head, but across the neck."

The cane was broken in three pieces. In the ensuing fight Lewis received a beating which caused him to go to the hospital for treatment.

The real estate salesman, Powers, heard Lewis talking over the phone, but he was in another room and was unable to relate what was said. Concerning Lewis' actions immediately after the telephone conversation, he testified:

"Well, I was sitting at the dining room table, and he came out and said, 'My brother-in-law is coming over here.' And then he made a beeline for the back of his house, and got his cane, and then came to the living room."

A few seconds later, according to Powers, Merrill came to the front door, which was closed. There was a heated conversation between Lewis and Merrill in which the former said: "If you come in, I'll let you have this cane." Merrill did come in and "he did get the cane over his head." The witness testified that when Merrill came to the door, Lewis was standing about five feet from the door armed with the cane.

Merrill's version is quite different. He testified regarding the telephone conversation:

"A He [Lewis] said he wanted to sell the property, and he had the real estate man over there with him. He wanted to get ahold of his

ex-wife. Like I say, I told him, I said, 'Don't call us. Please don't bother us. We don't want to be involved in your troubles.'

"My wife answered the phone two nights prior to that, and told him to call Mr. McGeorge, Mrs. Lewis's attorney, that he was handling the sale of the property. He became very abusive and called my wife some very violent and vulgar names. This was two nights prior to the time I went over there.

"The night I answered the telephone, that this incident occurred, he said, 'You and that owl-eyed bitch of a wife of yours are the cause of all my trouble.' I told him, 'I don't appreciate these names you are calling my wife, and please leave us alone.' And he said, 'Come on over and we will settle this'—so I went over."

Merrill further testified that when he arrived at Lewis' house Lewis met him at the door. He thought the door was open. He said that his purpose in going there was to tell the real estate salesman, Powers, that Mrs. Lewis wanted to be notified through her attorney and to request that they "not involve us in this difficulty they were having." He did not recall that Lewis told him not to come in the house. Mrs. Merrill had followed him, and, according to the testimony of both of them, Lewis said: "You have got the whore with you." The next thing that he remembered after entering the house was Lewis hitting him beside the head with a cane. He did not call Lewis any names, but only said: "Leave us alone. Just leave us alone. We don't want you to bother us."

Mrs. Merrill testified that the door was opened for her husband and that as he entered the house he told Lewis to "leave us alone" and that Lewis was saying: "You leave me alone. You get out of here."

She did not remember Lewis telling her husband not to come in.

■ We do not think that under this evidence and the permissible inferences therefrom the court could say as a matter of law that the defendant was a trespasser. The jury could have found that he entered the house of the plaintiff at the invitation of the latter and that the invitation was not withdrawn before he entered. They could also have found that after the defendant got in the house he was told to leave. If he refused to comply with the demand then he would have lost his status as an invitee, but if, not having himself assumed the role of an aggressor, he was attacked by the plaintiff before he had an opportunity to comply with the demand, he would not, in that case, have been a trespasser.

There was no error in submitting the question to the jury.

Error is assigned to the admission in evidence over plaintiff's objection of a police report. The report appears on its face to have been made by a member of the Portland Police Department regarding a burglary of the plaintiff's house committed on March 22, 1958. A tape recorder was stolen and a footlocker in a room on the second floor was broken into. The report was produced by a city policeman who testified that he was assigned to the record bureau at police headquarters, that the report was kept in the regular course of business and that he had taken it from the file in response to a subpoena. Nothing further as to its authenticity was shown. The officer who made the report was not a witness. The report contains the following statement:

"Comp. [complainant] believes his ex wife who is going by the name of Lewis or Harris, Beth M.

living at 5256 S.E. Lambert and her cousin Merrill, Parley, who lives at 2019 S.E. Cypress (next door to comp.) is responsible for the theft. As he had kept money in the trunk upstairs at times and since the door to the upstairs room was locked someone had to know where the key to the door was hidden (on top the door molding.) * * * Comp. stated he has had nothing but trouble from his ex wife and her cousin."

The complainant referred to in the report was the plaintiff, Doctor Lewis. There had been no forceable entry into plaintiff's house and the indications were that the crime was probably committed by someone familiar with the premises. Before the introduction of the police report the plaintiff had been questioned about the matter on cross examination and testified that he did not accuse the defendant of the crime, but that in answer to a question by the police officer "Who do you suppose did that?" he said "I don't know. There were only three people besides myself who knew how to get into that place and knew I kept valuables in that footlocker." He told the officer that these were his former wife and the defendant and Mrs. Merrill.

■ The report was offered on the theory that it was relevant on the subject of malice and was admissible for purposes of impeachment. Its reception is claimed to be authorized by ORS 41.690, The Uniform Business Records as Evidence Act. Whether the act is applicable to a record of this character need not be decided, though *Snyder v. Portland Traction Company,* 182 Or 344, 355, 185 P2d 563, cited with approval in *Miller v. Lillard,* 228 Or 202, 364 P2d 766, 770, strongly indicates that it is not. Cf. *Christ v. McDonald,* 152 Or 494, 499, 52 P2d 655. In any case,

the exhibit was not admissible. It does not purport to state what Lewis said concerning the identity of the burglars, but what Lewis "believes". Had the officer who made the report been on the witness stand, he would not have been permitted to testify to Lewis' belief, for that would have been only the conclusion of the witness. If the officer could not so testify himself, the testimony would not acquire admissibility simply because it was included in the officer's report, even though the "Uniform Act" is applicable. *Haas v. Kasnot,* 371 Pa 580, 92 A2d 171; *Reisman v. Los Angles City School Dist.,* 123 Cal App 2d 493, 267 P2d 36; *Hoel v. City of Los Angeles,* 136 Cal App 2d 295, 288 P2d 989; *MacLean v. City and County of San Francisco,* 151 Cal App 2d 133, 311 P2d 158; *Behr v. County of Santa Cruz,* 172 Cal App 2d 697, 342 P2d 987; Annotation, 144 ALR 727.

The court erred in admitting the evidence and, as we cannot say that the ruling was not prejudicial to the plaintiff, the error is ground for reversal.

The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.