Argued and submitted April 13, reversed and remanded with instructions June 3, reconsideration denied September 2, petition for review denied October 27, 1992
(314 Or 574)

VALLEY INDUSTRIES,
*Respondent,*

*v.*

The SCOTT FETZER COMPANY,
*Appellant.*

(9002-00704; CA A69351)

832 P2d 1262

Peter R. Chamberlain, Portland, argued the cause for appellant. With him on the briefs were Barry M. Mount and Bodyfelt Mount Stroup & Chamberlain, Portland.

Cathy E. Smith, Portland, argued the cause for respondent. With her on the brief was Underwood, Norwood & Hiefield, Portland.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DEITS, J.

## DEITS, J.

Defendant The Scott Fetzer Company (Fetzer) appeals from the judgment for plaintiff Valley Industries (Valley) in this action for contractual and common law indemnity and defense costs.

In 1983, Valley purchased the assets of Fetzer's division that manufactures ball coupling devices, which are used to attach trailers to vehicles. The parties entered into an agreement whereby Fetzer promised to defend and indemnify Valley for claims made against it in connection with products sold before May 1, 1983. In October, 1984, Linda Fischer was fatally injured when her vehicle collided with a horse trailer that had become separated from a truck driven by Dennis Phillips. Her personal representative brought a wrongful death action against Valley, alleging that Phillips' truck and trailer had been connected with a ball coupling device of Valley's manufacture that he purchased "[o]n or about 1984." The device was allegedly defective, with the result that the trailer became separated from the truck and the fatal accident ensued.

The focal issue in the wrongful death action was which of two ball coupling devices that Phillips owned had been in use at the time of the accident. Only one, the "bolt device," could be linked to Valley. In his deposition, Phillips testified that he purchased that device in 1979 or 1980. However, he also testified that it was not the device that he had been using at the time of the accident and that it was still in his possession and was intact. In *Fischer v. Valley Industries, Inc.*, 96 Or App 405, 773 P2d 9, *rev den* 308 Or 197 (1989), we reversed and remanded the trial court's summary judgment for Valley in the wrongful death action. Thereafter, it and the personal representative settled.

Valley had tendered the defense of the wrongful death action to Fetzer and had provided it with Phillips' deposition as well as the Fischer complaint. Fetzer rejected the tender. After settling with the personal representative, Valley brought this action, seeking to recover its defense costs and indemnity for the settlement. Valley's theory was that Fetzer was on notice that the coupling device in question possibly had been sold to Phillips before May 1, 1983, and that

Fetzer was responsible for it both under the indemnity agreement and under the common law.

By stipulation of the parties, the duty to defend issue was decided by the court and the indemnity claim was tried to a jury. The question submitted to the jury was whether, at the time of the Fischer-Phillips accident, Phillips was "using a 'bolt' ball coupling device on his trailer." The jury answered "no," with the effect that the injuries in the underlying action could not be ascribed to Valley or Fetzer and Valley was not entitled to indemnity for the settlement. The trial court then ruled that Fetzer was required by the indemnity agreement to defend the Fischer claim on Valley's behalf and, therefore, that Valley was entitled to recover its defense costs. Fetzer appeals from the resulting judgment, and we reverse.[1]

In *St. Paul Fire & Marine v. Crosetti Bros.*, 256 Or 576, 475 P2d 69 (1970), an action on an indemnity agreement, the court held that the standard for determining whether a contractual indemnitor has a duty to defend is the same as in cases involving an insurer's duty. The court then explained that standard by quoting its earlier decision in *Ferguson v. Birmingham Fire Insurance Company*, 254 Or 496, 507, 460 P2d 342 (1969):

> "If the complaint [in the underlying action], without amendment, may impose liability for conduct covered by the policy, the insurer is put on notice of the possibility and it has a duty to defend."

■ Valley is met at the outset with the formidable obstacle that the Fischer complaint alleged that the device was purchased "on or about 1984," and the indemnity agreement applies only to sales made before May 1, 1983. However, it relies on *Lewis v. Merrill*, 228 Or 541, 365 P2d 1052 (1961), where the court, in deciding a Statute of Limitations issue, held that a pleading that alleged that an event occurred "on or about March 27" did not show on its face that the event occurred before the end of March for purposes of determining when the statute began to run. The court explained that the term "on or about" in a pleading

> "is not an averment that [the event] occurred on any distinct day or time. The actual day or time may be either before or

---

[1] Valley's cross-appeal was dismissed pursuant to the parties' stipulation.

after the one stated with an 'on or about.' " 228 Or at 543.

Valley reasons by analogy that the allegation of the purchase "on or about 1984" should be read flexibly and was sufficient to put Fetzer on notice that a sale before May 1, 1983, might be involved.[2] Fetzer argues to the contrary and relies on the statement in *Lewis v. Merrill, supra*:

> "We recognize, of course, that there are limits beyond which the courts will not go in the application of this rule of construction to particular cases. Thus, as the court said in *Newcomer v. Ament*, 214 Iowa 307, 242 NW 82: 'no date in July is "on or about" the last days of October.' " 228 Or at 544.

Similarly, we conclude that the phrase "on or about 1984" cannot be read to refer to a date eight months before the end of 1983.

■    Valley argues next that, if the complaint was not sufficient in itself to arouse Fetzer's awareness of its possible responsibility, Phillips' deposition testimony that he purchased the coupling device in 1979 or 1980 "clarified" the pleading and supplied the requisite information. Fetzer responds, first, that Phillips also testified that he was not using the Valley device at the time of the accident and, second, that the duty to defend must be determined from the Fischer complaint alone without resort to extrinsic evidence. Both parties rely on *Oregon Insurance Guaranty Assoc. v. Thompson*, 93 Or App 5, 10, 760 P2d 890 (1988), *rev den* 307 Or 303 (1989), where we said:

> "Although the duty to defend is generally determined by comparing the terms of the insurance policy with the allegations in the underlying complaint,[5] * * * and an insurer has an obligation to defend if the injured claimant could recover under those allegations on any basis for which the insurer affords coverage, *Oakridge Comm. Ambulance v. U.S. Fidelity, supra*, n 5, 278 Or at 24. Those rules are applicable only 'in the absence of any compelling evidence of no coverage.' *Casey v. N.W. Security Ins. Co.*, 260 Or 485, 489, 491 P2d 208 (1971). If lack of coverage has uncontrovertibly been established in a separate judicial proceeding, the insurer has no

___

[2] Fetzer contends that this argument was not made below and should not be addressed here. Because the argument presents a legal issue and, if correct, could provide an alternative basis for affirming the judgment, we address it.

obligation to defend. 260 Or at 490.

"5 * * * * *

"Although an insurer has a duty to defend only if the claim is covered by the policy, the duty is derived from the allegations in the complaint, not by the eventual verdict. 13A Couch, *Cyclopedia of Insurance Law* 469, § 51:44 (1982). The insurer's knowledge of facts not alleged in the complaint is irrelevant. *Oakridge Comm. Ambulance v. U.S. Fidelity*, 278 Or 21, 24, 563 P2d 164 (1977). To allow an insurer to withhold a defense until the question of coverage is resolved by the verdict would render the duty to defend illusory. *See Casey v. N.W. Security Ins. Co.*, 260 Or 485, 489, 491 P2d 208 (1971)."

That quotation deals with the opposite side of the coin from the one presented here. The question addressed there was whether and what kind of extrinsic information could excuse a duty to defend that the complaint alone would indicate existed; here, the complaint does not reveal a duty, and the question is whether the Phillips deposition had to be considered by Fetzer in deciding whether it had a duty. Valley contends that Fetzer's reliance on our language emphasizing the complaint as the source of the indemnitor's information is misplaced and that the quoted language read as a whole makes clear that an indemnitor cannot ignore information that is to be found outside the complaint and that supports the existence of a duty to defend. It is unnecessary to decide that issue. Even if information learned from outside the complaint may sometimes give notice of a duty to defend, the evidence relied on here, namely, the deposition, falls well short of the "compelling evidence" that, if *Oregon Insurance* is applicable by analogy, must be present to require an indemnitor to defend notwithstanding the absence of anything in the complaint that discloses the duty.

Phillips did state a date of purchase that differed from the date alleged in the complaint. However, that is not conclusive contrary evidence, and he also testified that he was not using Valley's coupling device at the time of the accident.[3]

---

[3] Both parties proceed on the understanding that the duty to defend turns wholly on whether the information furnished Fetzer put it on notice that one particular ball coupling device was possibly involved in the accident. That under-

If anything, the deposition reinforces the absence of a duty that is reflected by the complaint itself. The testimony tends to show that, regardless of when the product was sold, it had nothing to do with the accident. Although that ultimate fact might not excuse a duty to defend if one were discernible from the complaint, the deposition can scarcely be regarded as compelling extrinsic evidence that establishes a duty that is not to be found in the complaint.

■     Valley also argues that Fetzer had a duty to defend under principles of common law indemnity. Its argument centers on whether, as between the two, Fetzer, rather than Valley, should bear the cost of defending the Fischer claim. The argument re-emphasizes Phillips' deposition testimony that he bought the device in 1979 or 1980. Valley also maintains that it did not have to

> "prove that Fetzer committed a tort that caused Valley to be sued * * *. All that is required is that, based on the facts and circumstances of the underlying action, it is more equitable that Fetzer bear the burden of the defense of the case. * * * As between the manufacturer of the product and a later successor to the product line, it is more equitable that the manufacturer bear the burden of defending the product."

As noted in our discussion of the contractual issue, however, Fetzer was entitled to take as correct the 1984 date alleged in the complaint, rather than the different date in Phillips' deposition. Moreover, even assuming the correctness of Valley's statement of what it *had* to show, its argument fails because it *did* not make that showing. When all is said and done, all that Valley demonstrates is that neither it nor Fetzer nor the product was involved in the events leading to Fischer's death but Valley was nevertheless sued for it. That provides no basis for indemnity or for a duty to defend under the common law. Neither party was more responsible than the other. *See PGE v. Const. Consult. Assoc.*, 57 Or App 116, 643 P2d 1334 (1982).

Reversed and remanded with instructions to enter judgment for defendant.

---

standing would have been correct as to any tender made after our decision in *Fischer v. Valley Industries, Inc., supra.* Whether it would also have been correct in connection with any earlier tender is more problematical. We nevertheless accept the parties' premise.