# Stith Coal Co. *v.* Sanford.

*Injury to Servant.*

(Decided May 13, 1915.   68 South. 990.)

1. *Master and Servant; Injury to Servant; Complaint.*—Where the action was for injuries to a coal mine employee caused by rock falling from the roof of the mine on him, a complaint alleging the relation of master and servant, and that the employee requested the delivery of props or timbers, that it was the duty of the employer to promptly deliver the same, that the duty was breached, and as a proximate consequence thereof, the employee was injured, states a cause of action under Acts 1911, section 38, p. 514.

2. *Same; Operation of Mines; Regulation.*—The provision of Acts 1911, p. 514, section 38, are mandatory, and impose on operators of mines an imperative duty, but an operator who furnishes sufficient prop of suitable length and sizes, useful for propping the mine in the place where desired by an employee, performs the duty required, and it is not essential that he furnish props of the exact length demanded by an employee.

3. *Same; Evidence.*—Where recovery was sought on the theory that the employer failed to deliver props when demanded, and there was evidence that the coal in the room where the rock fell was three feet and five inches high, evidence that the employer furnished props three feet four inches, and three feet six inches, and that a prop three feet four inches, or three feet six inches, was suitable, as capboards could be used, or a place could be dug in the floor of the mine, was admissible for the purpose of showing that the employer furnished suitable props, and did not violate the provisions of section 38, Acts 1911, p. 514.

4. *Same; Negligence; Jury Question.*—Under the evidence in this case it was for the jury to determine whether the mine operator furnished suitable props as required by section 38, Acts 1911, p. 514, and thereby to relieve himself of liability to an employee injured by rock falling on him.

APPEAL from Walker Law and Equity Court.

Heard before Hon. T. L. SOWELL.

Action by Dave Sanford against the Stith Coal Company for damages for personal injury caused by rock falling from the roof of the mine upon him. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Transferred from Court of Appeals under the act creating said court.

STOKELY, SCRIVNER & DOMINICK, and BANKHEAD & BANKHEAD, for appellant.

RAY & COONER, for appellee.

GARDNER, J.—Suit by employee against the employer for damages arising out of an injury received while digging coal in the employer's mine. The employee was at work in a "room" in the mine, which was his working place, when a rock fell upon him from the roof, resulting in the injuries of which he complains. The case was tried upon count 6 of the complaint, the general issue, and special pleas of contributory negligence Nos. 3, 4, and 7, resulting in a judgment for the plaintiff, from which this appeal is prosecuted.

(1) The sixth count, after adopting that portion of count 2 which alleged the relationship of master and servant and that the plaintiff was engaged in the discharge of his duties under such employment at the time of the injury, and how the said injury occurred, then proceeds to allege in substance that the plaintiff gave notice of a demand or request to the person whose duty it was to deliver or have delivered certain props or timbers needed in the mines, and that it was the duty of the defendant to promptly deliver the said props, and

that this duty was breached by it, in that it failed to deliver or have delivered said props, and as the proximate consequence thereof plaintiff was injured.

It is thus seen that this count of the complaint rested for recovery upon the breach of the statutory duty set out in section 38 of an act entitled "An act to regulate the mining of coal in Alabama," approved April 18, 1911. Said section reads as follows: "Sec. 38. It shall be the duty of persons operating coal mines in this state to keep at a convenient place at or near the main entrance of the mine, or in the mines, a sufficient supply of props and other timbers useful for propping therein, of suitable lengths and sizes, for those working in such mines. It shall be the duty of those working in said mines who need props or other timbers to select and mark the same when needed for propping by them, designating on such props or timbers the place at which the same are to be delivered or give notice to the person whose duty it is to deliver or have the same delivered, of the number and kind of props or other timbers needed and of the place at which they are to be delivered. It shall then be the duty of the operator to promptly deliver or cause to be delivered such props or other timbers at the place designated."—Acts 1911, p. 500.

No question is here presented as to whose duty it was to prop the roof of the mine in the room where the plaintiff was at work (*Tutwiler C. & C. Co. v. Farrington*, 144 Ala. 157, 39 South. 898; *Mascott Coal Co. v. Garrett*, 156 Ala. 290, 47 South. 149), as that question is foreclosed by the plaintiff himself, who testified that it was his "duty to prop the roof when it was to be propped, and the company's duty to furnish the timbers."

(2) Testimony for the plaintiff tended to show that he requested that the company furnish him with props to be used at that place, and that defendant failed to do so, and therefore violated its statutory duty, and as the proximate consequence thereof the rock fell from the roof resulting in his injury.

There was also proof tending to show that the coal in that room, where the rock fell, was three feet and five inches high. It was the contention of the defendant that it furnished plaintiff with props three feet four inches, three feet six, and three feet eight and ten inches, and that in this particular place a prop three feet four inches, as well as one three feet six inches, was suitable and proper to be used the height of the coal being three feet five inches.

It was further insisted by defendant that it was customary and proper in all well-regulated mines to use with the props what is known as a "cap board." Indeed, this seems not to be controverted, as the following quotation from the testimony of the plaintiff discloses: "A cap board is an instrument in general use in the mines, used for the purpose of propping. Cap boards have been used in all mines where I have worked. It is a board from four to five inches wide and about twelve inches long and about one inch thick. When a prop is an inch short, you can use that other inch by putting in a cap board. A man needs a cap board under a prop when he uses it; that is the way to set it up. If the coal is four feet five inches, you can prop it with a prop four feet four inches and a cap board one inch."

The defendant did not have timbers cut three feet five inches, or other odd-number inches; but the insistence was they had furnished props three feet four inches, as well as three feet six inches, which were en-

tirely proper to be used in propping the roof of the mine where the height of the coal was, as previously stated, three feet five inches. There was evidence to show that it was proper to use cap boards over all props, as testified to by the plaintiff himself. There was also evidence tending to show that a prop three feet six inches was suitable and was used in well-regulated mines for propping purposes where the height of the coal was three feet five inches, as here, the same being done by digging an inch or more in the floor of the mine and in using a "cap" on the prop where it touches the roof.

The defendant offered to show that the props so furnished were entirely suitable, and such as were used in all well regulated mines. Objection to such testimony was sustained by the court, and the same question was presented by various objections sustained, as well as charges refused. The defendant insisted that such proof was offered not only in support of his defense of contributory negligence, but also to show that by furnishing such props it had substantially complied with its statutory duty and with the request of the plaintiff, and that there was no breach or violation of such statutory duty as was the proximate cause of the injury.

On the other hand, it seems to have been the insistence of counsel for the plaintiff that, as the testimony for the plaintiff tended to show that he had demanded props three feet five inches in length, therefore the testimony of the defendant to the effect that it had furnished props three feet four, and three feet six inches in length, was not competent for the reason that it would not be in compliance with the statute and, as stated in the grounds of objection, "was in violation of the terms of the statute;" that, the plaintiff having de-

manded props three feet five inches, it was necessary, to comply with the statute, that the defendant furnish props of the exact length and dimensions so demanded; and that proof that it had furnished props entirely suitable for the purpose needed was incompetent.

Counsel for plaintiff argue that the above-quoted statute is mandatory, as has been held by other states having statutes of similar character, citing the following cases dealing with the question: *McDaniels v. Royle M. So.,* 110 Mo. App. 706, 85 S. W. 679; *Leslie v. Rich. Hill C. M. Co.,* 110 Mo. 31, 19 S. W. 308; *Springfield C. M. Co. v. Gedutis,* 227 Ill. 9, 81 N. E. 9; *West Anthracite C. Co. v. Beaver,* 192 Ill. 333, 61 N. E. 335; *Kelleyville C. Co. v. Strine,* 217 Ill. 516, 75 N. E. 375; *Sugar Creek M. Co. v. Peterson,* 177 Ill. 325, 52 N. E. 475; *Donk Bros. C. & C. Co. v. Lucis,* 226 Ill. 23, 80 N. E. 560; *Lowe v. Clear Creek C. Co.,* 140 Ky. 754, 131 S. W. 1007, 33 L. R. A. (N. S.) 656, Ann. Cas. 1912B, 574; 5 Labatt, M. & S. pp., 5811-19; *Druglis v. N. W. Imp. Co.,* 41 Wash. 398, 83 Pac. 101; *Morris C. Co. v. Donley,* 73 Ohio St. 298, 76 N. E. 945. The holdings of these authorities—that a statute of this character places an imperative duty upon the owner or operator, and is therefore mandatory and not directory, and that, the statute being intended for the preservation and protection of human life, it should be so construed that the ends for which it was intended may be accomplished— are in accord with the holdings of this court on questions of like character, and we so construe the statute here.—*Howell's Min. Co. v. Grey,* 148 Ala. 535, 42 South. 448; *De Soto C. M. Co. v. Hill,* 179 Ala. 186, 60 South. 583.

While we construe this statute as mandatory, yet the law is a reasonable master, and it should be so construed in the light of common sense in ascertaining the

legislative intent. The language of the above-quoted section plainly shows the purpose of the act (the object being the preservation of human life) is to have furnished at a convenient place, either in the mine or near its main entrance, a sufficient supply of props and other timbers useful for propping therein, and of suitable lengths and sizes, when needed for such purpose by the miner.

This cause of action is based upon the latter portions of the above-quoted section, and plaintiff claims that he gave notice of the number and kind of props needed and that they were not delivered. Upon such demand being made, it becomes, of course, under the statute, the duty of the operator to comply therewith; the demand itself being reasonable and timely.—*Springfield Mining Co. v. Gedutis, supra.* But there is nothing in the act indicating in the least that the operator would be required to furnish props of the exact length as contended by the plaintiff, if he in fact furnished a sufficient supply of props of suitable lengths and sizes and useful for propping the mine in the place where desired by the plaintiff. Our attention is directed to the language of the opinion in *West. Anthracite C. Co. v. Beaver, supra,* where it was said that the miner must be the one to determine the length and dimensions of the props and cap pieces which he deems necessary to properly secure the roof for his own safety. And the opinion proceeds: "If he ordered $6\frac{1}{2}$ feet props, the owner or operator has not complied with the statute when he has furnished props which must be spliced or sawed in two before they can be used."

But this opinion by no means lends color to the argument that, where the operator has furnished props entirely suitable for the purpose for which they were ordered and which require no unusual effort or incon-

venience in setting them up, it would be in violation of his duty as a matter of law, although they might vary an inch from the exact dimensions ordered. The reasoning of the above-cited authority is well understood when it is considered that the purpose of the act was the preservation of human life, and, as a duty rested upon the operator to furnish suitable props, that duty is not met when he furnishes props which must be "worked over," as it were, before they can be used.

The contention of counsel for the plaintiff would lead to a construction of the statute wholly unreasonable. Following the logic of the insistence, it would leave it to the whim or caprice of the miner to order props of most unusual lengths and sizes unheard of in mining operations. Doubtless having this in view, the Supreme Court of Illinois, in *Springfield Mining Co. v. Gedutis, supra,* said: "We are of the opinion that under this statute, when the miner makes a reasonable and timely demand for timber of a particular and specified kind, to be used in propping the roof of his working place, the operator should furnish him with such timbers as are called for"—thus recognizing that the demand of the miner must be reasonable.

The insistence would further lead to the result that if the props furnished were not of the exact length demanded, but varied therefrom only a fraction of an inch, which might in no way affect their suitableness for the purpose for which they were ordered, nevertheless the operator had breach his statutory duty and liability had attached. It is clear that the Legislature intended no such result, and such a construction of the statute would be out of harmony with all reason, and, as previously stated, the statute itself shows that its purpose was to require the operator to furnish suitable props upon the demand of the miner.

All the above-cited cases have been carefully reviewed, and we find none which go to the length contended for by counsel for the plaintiff or, we think, even tending in that direction; they are by no means in conflict with the conclusion we have here reached.

(3, 4) The evidence is in conflict as to whether or not props three feet six inches and three feet four inches were furnished. It would seem that timbers three feet six inches would require that a small hole be dug in the floor of the mine. If this was usual and customary and could be done in this particular place without extraordinary or unusual effort, and that to request it to be done would be reasonable and expected of an ordinarily prudent miner, it would be a question for the jury as to whether props of that length were entirely suitable, and that in furnishing them the defendant had substantially complied with the demand. The plaintiff, however, testified that it was practically impossible to dig a hole in the floor of that mine. This also would be a question for the jury; and so as to the props three feet four inches. The court should have admitted evidence to the effect that props of that length were entirely suitable for the purposes intended, and that in all well-regulated mines they are used with a cap; and it should have been left to the jury to determine whether or not the furnishing of such props was a substantial compliance with the plaintiff's demand and with the statutory duty placed upon the operator; also, as to whether or not the failure to furnish props of the exact length of three feet five inches was the proximate cause of the injury. It was admitted by the plaintiff that no timbers were laid aside and marked by him, but he insisted that he gave notice, and made verbal demand for the props upon the person whose duty it was to deliver or have the same delivered; and

[Stith Coal Co. v. Sanford.]

this was sufficient notice or demand under provision of the above-quoted statute.

The question here discussed is presented in several forms, but there is no necessity for treating separately each assignment of error. What is here said shows that a reversal of this case is necessary, and will be sufficient for the purposes of another trial.

Counsel for appellee urge upon us that, even should error have been committee in the trial of this cause, it was error without injury and should not work a reversal, and they insist that the defendant got the benefit of the testimony notwithstanding the objections, which were sustained, and that charges given cured any error which might have been committed in the refusal of charges asked upon the theory above indicated. To this insistence we have given careful consideration, and, after a painstaking review of the record in the case, we are persuaded that the errors complained of probably injuriously affected substantial rights of the parties, and that therefore there is no room for the application in this case of the rule as to error without injury.

The judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.

Anderson, C. J., and McClellan and Sayre, JJ,. concur.