14 So.3d 104 (2009)
Troy BROWN
v.
GENERAL MOTORS CORPORATION.
1061660.
Supreme Court of Alabama.
January 16, 2009.
*106 Charles H. Volz III, Montgomery, for appellant.
G. Christopher Gleason of The Rose Law Firm, PLLC, Atlanta, Georgia, for appellee.
PER CURIAM.
Troy Brown appeals from a summary judgment in favor of General Motors Corporation ("GM") on Brown's claims against GM stemming from an allegedly defective automobile Brown purchased. We reverse and remand for further proceedings.

Facts and Procedural History
On August 3, 2002, Troy Brown visited Bill Heard Chevrolet Company ("Bill Heard"), an independent authorized GM dealership in Georgia. Brown selected a Chevrolet Corvette automobile and completed a retail sales contract with Bill Heard for the purchase of the car. As part of the retail sales contract, Brown and Bill Heard entered into an agreement to submit any claims arising from the sale of the car to arbitration to be administered by the American Arbitration Association ("the AAA"). GM was not a party to the retail sales contract or to the arbitration agreement. However, GM issued with the sale of the car what it refers to as a "written limited warranty" providing that GM would repair or correct defects in materials or workmanship in the car for the first three years or the first 36,000 miles of use, whichever occurred first. Additionally, Brown purchased a "GM Protection Plan" that extended GM's obligation to five years or 50,000 miles, whichever occurred first. After completing the paperwork for the purchase of the car, Brown drove the car home to Alabama. A few days later, Brown attempted to register the car and discovered that Bill Heard had mistakenly collected too much money for the taxes on the vehicle. Brown informed Bill Heard of the excess taxes that Bill Heard had collected. On August 13, 2002, an employee from Bill Heard drove to Brown's place of business with two checks to reimburse Brown for the taxes. Brown signed a new retail sales contract to reflect the difference in the amounts of taxes collected and surrendered his copy of the original retail sales contract that he had executed on August 3, 2002.
Brown experienced a series of problems with the car. On multiple occasions, Brown took the car to an authorized GM service center for repairs and, in each instance, signed an arbitration agreement with the individual service providers at the time the car was serviced. However, the service providers were not ultimately able to resolve the issues with the car to Brown's satisfaction. In October 2005, Brown filed a "Consumer Arbitration Demand" with the AAA and sent an arbitration-demand letter to GM. However, GM refused to participate in arbitration with Brown because it was not a signatory to the arbitration agreement. Brown did not petition to compel GM to arbitration.
*107 On August 8, 2006, Brown sued GM in the Montgomery Circuit Court, alleging breach of warranty under 15 U.S.C. § 2310(d)(1)(A), a part of the Magnuson-Moss Warranty-Federal Trade Commission Act ("Magnuson-Moss Act"); misrepresentation; and violations of the Alabama Motor Vehicle Lemon Law Rights, § 8-20A-1 et seq., Ala.Code 1975.[1] In October 2006, GM moved to dismiss the action pursuant to Rule 12(b)(6), Ala. R. Civ. P. The trial court denied GM's motion. GM answered Brown's complaint on February 12, 2007, but did not assert any affirmative defenses in that answer. In June 2007, GM moved for a summary judgment, arguing for the first time that Brown's claims were barred by the statute of limitations. Brown opposed that motion. The trial court held a hearing on GM's motion and subsequently entered a summary judgment in favor of GM on all the remaining claims. Brown now appeals.

Issues
Brown argues three issues on appeal. First, Brown argues that the trial court relied on this Court's decision in Tittle v. Steel City Oldsmobile GMC Truck, Inc., 544 So.2d 883 (Ala.1989), which, Brown claims, is a decision that was wrongly decided and should be overruled. Second, Brown argues that the trial court erred in entering a summary judgment for GM because, he says, the statute of limitations was tolled while Brown was attempting to arbitrate his disputes with GM. Third, Brown argues that GM waived the affirmative defense of the statute of limitations when it did not plead this defense before moving for a summary judgment on that ground. Because we agree with Brown's first argument, we do not reach the latter two issues.
Standard of Review
"`On appeal, this Court reviews a summary judgment de novo.' DiBiasi v. Joe Wheeler Elec. Membership Corp., 988 So.2d 454, 459 (Ala.2008) (citing Ex parte Essary, 992 So.2d 5, 8 (Ala.2007)). In order to uphold a summary judgment, we must determine that `there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala. R. Civ. P. `When the movant makes a prima facie showing that those two conditions have been satisfied, the burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact.' Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952 (Ala.2004). Substantial evidence is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see also § 12-21-12(d), Ala. Code 1975. In reviewing a summary judgment, we must view the evidence in the light most favorable to the nonmovant. Johnny Ray Sports, Inc. v. Wachovia Bank, 982 So.2d 1067, 1071 (Ala. 2007). `Finally, this Court does not afford any presumption of correctness to the trial court's ruling on questions of law or its conclusion as to the appropriate legal standard to be applied.' Di-Biasi, 988 So.2d at 459."
Catrett v. Baldwin County Elec. Membership Corp., 996 So.2d 196, 199 (Ala.2008).

*108 Analysis

In Tittle, Rodney K. Tittle purchased a new automobile from Steel City Oldsmobile GMC Truck, Inc. ("Steel City"), on October 9, 1981. GM agreed to "repair and adjust defects in material or workmanship that occurred during the first 12 months or first 12,000 miles in which the car was in use." 544 So.2d at 884. However, Steel City was unable to repair the car. Tittle finally sued Steel City, General Motors Acceptance Corporation, and GM on January 29, 1986, alleging breach of warranties. Steel City and GM moved for a summary judgment based upon the statute of limitations. The trial court granted Steel City's and GM's motions, and Tittle appealed to this Court. This Court held that Tittle's state-law and Magnuson-Moss Act claims were subject to the statute of limitations provided for contracts for sale in § 7-2-725(2), Ala. Code 1975:
"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered; however, a cause of action for damages for injury to the person in the case of consumer goods shall accrue when the injury occurs."
This Court held that "Tittle's warranty [did] not extend to the future performance of his car," and therefore upheld the trial court's determination "that Tittle's cause of action, by statute and by the express terms of his warranty, accrued at the time Steel City delivered the vehicle to him." 544 So.2d at 891.
In the present case, Brown took delivery of the car on August 3, 2002. GM argues that, under Tittle, the statute of limitations ran four years later on August 3, 2006, and, therefore, that Brown's action, filed on August 8, 2006, is barred. Brown asks us to revisit our holding in Tittle, noting that the fact that many manufacturers offer "warranties" in excess of four years highlights the error of the approach adopted in Tittle. He notes that, under the accrual rule adopted in Tittle, manufacturers may offer consumers a warranty that is not judicially enforceable in accordance with its terms because the term of the warranty extends beyond the four-year statute of limitations prescribed in § 7-2-725(1), Ala.Code 1975.[2]
After carefully considering Brown's invitation to reconsider our holding in Tittle as to the time a cause of action of the nature presented here accrues, we are convinced that, in the interest of fairness and logic, we should accept that invitation and overrule Tittle.
The contractual provision at issue in this case states, in part, as follows:
"General Motors Corporation will provide for repairs to the vehicle during the warranty period in accordance with the following terms, conditions and limitations.
"....
"Repairs Covered: The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period....

*109 "Warranty Period: The warranty period for all coverages begins on the date the vehicle is first delivered and ends at the expiration of the coverage period.
"Bumper-to-Bumper Coverage: The complete vehicle is covered for 3 years or 36,000 miles, whichever comes first...."
In addition, Brown purchased a "GM Protection Plan," which extended the warranty period to 5 years or 50,000 miles, whichever occurred first. In essence, therefore, the "warranty" at issue consisted of a promise by GM to repair the vehicle for any defects related to materials or workmanship that occurred during the 5-year period (or the period it took to drive 50,000 miles, whichever occurred first) after the vehicle was purchased.
Brown contends that the same defects continued to occur throughout the initial three-year warranty period. For example, he contends that the automobile was in the custody of Chevrolet repair facilities for repair attempts for 81 days during the period beginning on February 2, 2004, and ending on June 16, 2005. Brown filed this action on August 8, 2006. Among other things, he contends that GM did not fulfill its obligation to effectively make the necessary repairs for the defects occurring in this vehicle during the warranty period.[3]
GM argues that we should apply our holding in Tittle v. Steel City Oldsmobile GMC Truck, Inc. As noted, under Tittle, claims of breach of what have since come to be referred to as "repair warranties" were held to have accrued, not when the manufacturer failed to effectively repair the vehicle as it had "warranted" it would do, but at the time of the purchase and tender of delivery of the vehicle. Under Tittle, therefore, the limitations period held to apply to Tittle's claims expired four years following tender of delivery, see Ala. Code 1975, § 7-2-725(1) and (2), and Tittle was foreclosed from seeking judicial relief.
Under Tittle, if a "warranty" of the type and duration at issue here  i.e., a commitment by the manufacturer to repair any *110 defects that might occur for a period of five years after the purchase of the vehicle  is in place and defects first occur during the fifth year of the warranty period and the manufacturer thereafter fails to effectively make the promised repairs, the statute of limitations will have expired before the defects will have occurred and before the manufacturer will have breached its promise to make the necessary repairs. We are unable to see how such a result is either fair or logical, or what the legislature intended. See Thompson v. State, 525 So.2d 820, 823 (Ala.1985) ("`"[T]here is no canon against using common sense in construing laws as saying what they obviously mean."'" (quoting Commentary to § 13A-1-6, Ala.Code 1975, "General Rules of Construction")); Weill v. State ex rel. Gaillard, 250 Ala. 328, 335, 34 So.2d 132, 138 (1948) ("We cannot cast aside our common sense in trying to arrive at the intent of the legislature."); Paterson v. Wisener, 218 Ala. 137, 138, 117 So. 663, 663 (1928) (expressing an unwillingness to impute to the legislature a result lacking in fairness "unless the language of the statute forcibly drives us to that conclusion"); Stith Coal Co. v. Sanford, 192 Ala. 601, 606-07, 68 So. 990, 992 (1915) ("the law is a reasonable master, and it should be so construed in the light of common sense in ascertaining the legislative intent").
Some authorities take the position that a "warranty" under which the manufacturer or seller undertakes to repair defects occurring during a prescribed period following the purchase of the vehicle is "a warranty explicitly extend[ing] to future performance of the goods" under § 7-2-725(2), Ala.Code 1975. See, e.g., 4B Lary Lawrence, Lawrence's Anderson on the Uniform Commercial Code, § 2-725:102 and :129 (3d ed.2001). Under this approach, a purchaser's cause of action for the "warrantor's" failure to perform the required repairs under the "warranty" would accrue  quite understandably  when that failure occurs. § 7-2-725(2).
Other authorities take the position that a "warranty" of the nature presented here is not an ordinary "express warranty" within the contemplation of the Uniform Commercial Code ("the U.C.C.") and, therefore, in truth, is not a "warranty" subject to breach at the time of tender of delivery of the vehicle. Specifically, Brown points out that an "express warranty" is defined in Alabama's version of the U.C.C. as follows:
"`(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
"`(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
"`(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.'"
Brown's brief, at 22-23 (quoting § 7-2-313(1), Ala.Code 1975 (emphasis added in Brown's brief)). Consistent with the emphasized passages, Brown cites several authorities for the proposition that true warranties under the U.C.C. go to "the inherent quality of the goods or their future performance." Cosman v. Ford Motor Co., 285 Ill.App.3d 250, 261, 674 N.E.2d 61, 68, 220 Ill.Dec. 790, 797 (1996). See also Moorman Mfg. Co. v. National Tank Co., 91 Ill.2d 69, 78, 435 N.E.2d 443, 447, 61 Ill.Dec. 746, 750 (1982) (U.C.C. warranty rules "determine the quality of the product the manufacturer promises and thereby determine the quality he must deliver"); *111 Alloway v. General Marine Indus., L.P., 149 N.J. 620, 630, 695 A.2d 264, 269 (1997) ("the U.C.C. provides for express warranties regarding the quality of goods"); 1 William D. Hawkland, Uniform Commercial Code Series § 2-313.4, at 546 (2002) ("Express warranties relate exclusively to quality, description and title of the goods and have nothing to do with other terms of the contract."). With this understanding, the statutory pronouncement in § 7-2-725(2) that "[a] breach of warranty occurs when tender of delivery is made" makes sense, according to Brown. See Max E. Klinger, The Concept of Warranty Duration: A Tangled Web, 89 Dick. L.Rev. 935, 939 (1985) ("Section 7-2-725(2) presumes that all warranties, express or implied, relate only to the condition of the goods at the time of sale," and "[a]s a result, the period of limitations begins to run at that time ....").
Brown then contends that the manufacturer's obligation at issue here, and in Tittle, is not related to the quality or description of the goods. He cites numerous authorities for the proposition that language of the nature used in the "warranty" at issue here, obligating GM simply to make repairs to the vehicle for such defects as might occur during the warranty period, concerns the performance of the "warrantor" and has "nothing to do with the inherent quality of the goods or their future performance." Cosman, 285 Ill. App.3d at 261, 674 N.E.2d at 68, 220 Ill. Dec. at 797. See Curtis R. Reitz, Manufacturers' Warranties of Consumer Goods, 75 Wash. U. L.Q. 357, 364 n. 24 (1997) ("[p]romises to repair or replace refer to future performance of [the warrantor], not to future performance of goods"); Lawrence, § 2-725:129, at 332 (discussing the difference between a warranty of future performance and a covenant to repair or replace); C. Dewitt, Note, Action Accrual Date for Written Warranties to Repair: Date of Delivery or Date of Failure to Repair?, 17 U. Mich. J.L. Reform 713, 722 n. 35 (1984) (promise to repair "relates not to the goods and their quality, but to the manufacturer and its obligation to the purchaser.... [A] repair `warranty' falls beyond the scope of ... the on-delivery rule.").[4]
Accordingly, Brown contends that the cause of action here accrued when the "warrantor"  GM  failed to adequately repair the defects in the vehicle occurring during the warranty period. He notes that the first sentence of § 7-2-725(2) would still remain relevant: "A cause of action accrues when the breach occurs...." He points out that performance of GM's obligation to "provide for repairs to the vehicle" is not due at tender of delivery, but only if and when a "vehicle defect" occurs during the warranty period. He argues that, only in that event, if the promised repairs fail to correct the defect (after the promissor is allowed a reasonable opportunity to do so), is the "warranty" breached and a cause of action accrues. Reitz, 75 Wash. U. L.Q. at 364 n. 24 (tender of delivery date for accrual of the U.C.C. four-year statute of limitations is "completely inappropriate to promises to repair or replace goods that are later determined to be defective"); Cosman, 285 Ill.App.3d at 260, 674 N.E.2d at 68, 220 Ill.Dec. at 797 (breach "cannot occur until Ford refuses or fails to repair the powertrain if and when it breaks"); Monticello v. Winnebago Indus., Inc., 369 F.Supp.2d 1350, 1356-57 (N.D.Ga.2005) (noting that, under Georgia law, a written warranty *112 that provides for repair or replacement is breached when the purchaser returns the product to the dealer for repair and the repair is unsuccessful); General Motors Corp. v. Green, 173 Ga.App. 188, 190, 325 S.E.2d 794, 796 (1984) ("`"[W]here there is an agreement to repair or replace, the warranty is not beached until there is a refusal or failure to repair.... [I]t is the refusal to remedy within a reasonable time, or a lack of success in the attempts to remedy which would constitute a breach of warranty"'"); Belfour v. Schaumburg Auto, 306 Ill.App.3d 234, 241, 713 N.E.2d 1233, 1238, 239 Ill.Dec. 383, 387 (1999) (breach of a 3-year/50,000-mile repair warranty "cannot occur until [Volkswagen of America, Inc., the manufacturer] refuses or fails to repair the defect."); Poli v. DaimlerChrysler Corp., 349 N.J.Super. 169, 180, 793 A.2d 104, 110-11 (2002) (cause of action for breach of 7-year/70, 000-mile power-train warranty would not have accrued when car was delivered, but rather when persistent problems appeared or when manufacturer was unable to repair the defects).[5]
Professor Lawrence offers the following analysis:
"When a manufacturer makes an express `warranty' to repair or replace defective parts of goods that runs for more than four years, a problem arises when the plaintiff sues more than four years after the original tender of delivery of the goods.
"....
"Some courts meet this problem by holding that the manufacturer's express warranty relates to future performance.
".... The sounder approach is to recognize that the failure to repair or replace is merely a breach of a contract and not a breach of a warranty, and therefore no cause of action arises until the [manufacturer] has refused to repair or replace the goods. This is because until the [manufacturer] has failed or refused to make the repairs or provide a replacement, the buyer, not being entitled to such a remedy, has no right to commence an action for damages. As a result, the action is timely brought within four years of the [manufacturer's] failure or refusal."
4B Lawrence's Anderson on the Uniform Commercial Code, § 2-725:101 (footnotes omitted). Under the contractual language at issue in this case, we agree with Professor *113 Lawrence that the "sounder approach" is to consider that language as a promise to repair the goods in the event a defect occurs.
The approach adopted in Tittle cannot be correct. As Professor Lawrence points out, if a vehicle owner were to assert a cause of action within the four-year statute of limitations prescribed in Tittle, but before the manufacturer has failed or refused to repair any defects that might subsequently occur during the warranty period, the owner would have no right to commence an action. On the other hand, if the owner of the vehicle waits until after a breach of the "warranty" occurs  that is after the "warrantor" breaches its contractual obligation to repair a defect that occurs in the vehicle  the owner may have only a few weeks or even a few days to bring an action to enforce his or her rights, depending on how close to the four-year mark the manufacturer breaches its obligation to repair the vehicle. Indeed, if the failure to repair the vehicle does not occur until after the expiration of the fourth year following the purchase and tender of delivery of the vehicle, the owner would be completely foreclosed from seeking judicial enforcement of the contractual rights for which he or she bargained. As stated at the outset, we find this to be unfair and illogical and a state of affairs that the legislature could not reasonably have intended.
We overrule Tittle to the extent it holds that a cause of action for breach of a contractual undertaking of the nature presented here accrues at the time of the tender of delivery of the goods in question, rather than at the time the manufacturer breaches its contractual obligation to repair that good. Accordingly, we conclude that Brown's claim was not barred by the four-year limitations period prescribed in § 7-2-725(1). The judgment of the trial court is therefore reversed, and this case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and PARKER and MURDOCK, JJ., concur.
STUART and SMITH, JJ., concur in part and concur in the result.
LYONS, WOODALL, and BOLIN, JJ., concur in the result.
SEE, J., dissents.
SMITH, Justice (concurring in part and concurring in the result).
I concur in part and concur in the result. The provision at issue in this case does not warrant that there are no defects in the quality of the vehicle; instead, it expresses a promise to repair defects that may have existed at the time of delivery but that are not found until some time during the "warranty period."
The applicable provision states as follows: "Repairs Covered: The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period...." A "defect" is a "shortcoming" or "an imperfection that impairs worth or utility." Merriam-Webster's Collegiate Dictionary 326 (11th ed.2003). Both the "materials" of the car are installed and the "workmanship" is performed during the manufacturing process. If there is a "defect" in the materials installed or the workmanship during manufacturing, then that defect must naturally exist at the conclusion of the manufacturing process and at time the vehicle is delivered.
However, the provision does not stop there. It goes on to refer to the defects "occurring during the warranty period." "Occur" and "occurring" mean "to be found or met with," Merriam-Webster's *114 Collegiate Dictionary 858, and "to be found to exist or appear." The American Heritage College Dictionary 961 (4th ed.2007). Thus, the provision promises to repair defects in materials or workmanship, which must already necessarily exist immediately after the manufacturing process and at the time of delivery, when those defects appear or are found to exist. GM's obligation to perform under the provision, according to its terms, does not exist at delivery, but only at a later time: when the defect is found, appears, or otherwise manifests itself (so long as that occurs within the "warranty period").[6]
The Court in Tittle v. Steel City Oldsmobile GMC Truck, Inc., 544 So.2d 883 (Ala. 1989), without specific analysis of the language at issue, assumed that the promise in that case was a "warranty" and that Ala.Code 1975, § 7-2-725(2), which provides that a breach of warranty accrues at delivery of the goods, thus applied.[7] However, I do not believe that the provision at issue here is a "warranty," although it is labeled as such.[8] The various definitions of "express warranty" found in Ala.Code 1975, § 7-2-313, all relate to the inherent quality or specifications of the goods sold. The plain language of the provision in the instant case does not relate to the quality of the vehicle as delivered, and it does not promise that there are no defects in the vehicle. "This language clearly does not guarantee that the car will perform free of defects for the term of the agreement. In fact ... the language ... anticipates that defects will occur." Tittle, 544 So.2d at 891. Instead, the provision promises the performance of a future act on the part of GM: to repair the vehicle when a defect is discovered. I agree with the following:
"[T]he failure to repair or replace is merely a breach of a contract and not a breach of a warranty, and therefore no cause of action arises until the [manufacturer] has refused to repair or replace the goods. This is because until the [manufacturer] has failed or refused to make the repairs or provide a replacement, the buyer, not being entitled to such a remedy, has no right to commence an action for damages. As a result, the action is timely brought within four years of the [manufacturer's] failure or refusal."
4B Lary Lawrence, Lawrence's Anderson on the Uniform Commercial Code § 2-725:101 (3d ed.2001) (footnote omitted). Because the provision in this case is not a "warranty," its breach did not "occur[ ] when tender of delivery [was] made," § 7-2-725(2), but instead when GM failed to perform.
Tittle did not analyze whether the "warranty" in that case was actually a "warranty" for purposes of § 7-2-725(2); instead, the Court simply assumed that it was a warranty and that § 7-2-725(2) applied. *115 Additionally, subsequent caselaw discussing or applying Tittle has similarly failed to address whether "repair warranties" were actually warranties or were contractual obligations. See, e.g., Lands v. Lull Int'l, Inc., 963 So.2d 626 (Ala.2007); Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997); Hughes v. Hertz Corp., 670 So.2d 882 (Ala.1995); and Rhodes v. General Motors Corp., 621 So.2d 945 (Ala. 1993). However, to the extent Tittle requires this Court to assume that the provision in this case is a warranty for purposes of the statute of limitations found in § 7-2-725 and that the cause of action for the breach accrues at the time of delivery of the goods, I agree with the main opinion that it should be overruled.
STUART, J., concurs.
LYONS, Justice (concurring in the result).
The main opinion reverses the trial court's judgment and remands the case based on Troy Brown's contention that this Court should overrule Tittle v. Steel City Oldsmobile GMC Truck, Inc., 544 So.2d 883 (Ala.1989), in which this Court held that the plaintiff's breach-of-warranty claim arose at the time of delivery of the vehicle. Because I am persuaded that this case can be disposed of in favor of Brown based on his contention that GM waived the affirmative defense of the statute of limitations, I concur only in the result.
GM failed to assert the affirmative defense of the statute of limitations in its answer. GM nevertheless relied on the statute-of-limitations defense in its motion for a summary judgment. GM can avoid the consequences of its failure to assert the affirmative defense of the statute of limitations in its answer if the defense of limitations appears on the face of the complaint. See Wallace v. Alabama Ass'n of Classified Sch. Employees, 463 So.2d 135, 136-37 (Ala. 1984).
The only reference to a date appearing on the face of the complaint is in paragraph 4:
"4. On or about, to-wit, the 3rd day of August, 2002, the Plaintiff, Troy Brown, purchased one (1) 2002 Chevrolet Corvette from Bill Heard Chevrolet (an authorized dealer of the Defendant, GMC, located in Columbus, Georgia), said automobile having been manufactured by the Defendant, [GM], and bearing serial number _________."
(Emphasis added.) The action was commenced on August 8, 2006, four years and five days after the date referred to in the complaint. GM contends that the defense of limitations appears on the face of the complaint.
Noting the lack of Alabama authority on whether an allegation of time preceded by the phrase "on or about" or "to-wit" constitutes sufficient certainty to give rise to a limitations defense appearing on the face of the complaint, Brown relies on Lewis v. Merrill, 228 Or. 541, 365 P.2d 1052 (1961). In that case, the Supreme Court of Oregon held that an allegation that something occurred "on or about" a certain day is not an averment that the event occurred on any distinct day and that, therefore, the actual day or time may be either before or after the stated date. The Lewis court relied on Conroy v. Oregon Construction Co., 23 F. 71, 73 (C.C.Or.1885), in which the federal circuit court, when faced with the same question, concluded:
"In short, the averment amounts to nothing, so far as time is concerned. [Citation omitted.] This being so, it does not appear on the face of the complaint when the right of action accrued, and therefor it cannot be said that the action was not commenced in time, and a demurrer for that cause will not lie."
*116 The Lewis court correctly concluded that the defense of limitations does not appear on the face of the complaint when the complaint avers occurrence of the event giving rise to the claim on or about a specified date. We are not permitted to disregard the limiting phraseology in Brown's complaint lest we run afoul of the rule that allegations of the complaint are to be construed in a light most favorable to the plaintiff, with all doubts and allegations resolved in his favor. See Voyager Ins. Cos. v. Whitson, 867 So.2d 1065 (Ala. 2003). Because the defense of limitations does not appear on the face of Brown's complaint, GM cannot extricate itself from the consequences of its waiver of the affirmative defense of the statute of limitations, and the judgment dismissing the action is due to be reversed and the case remanded on this ground alone. I express no opinion as to the basis for reversal set forth in the main opinion; I therefore concur only in the result.
WOODALL, J., concurs.
WOODALL, Justice (concurring in the result).
I agree with Justice Lyons; therefore, I concur only in the result. See Black's Law Dictionary 1122 (8th ed.2004) ("on or about" means "[a]pproximately; at or around the time specified").
SEE, Justice (dissenting).
I do not agree with the main opinion that we should overrule Tittle v. Steel City Oldsmobile GMC Truck, Inc., 544 So.2d 883 (Ala.1989), and I do not find any other reason to reverse the judgment of the trial court; therefore, I respectfully dissent.

I.
In Tittle, Rodney K. Tittle purchased a new car from Steel City Oldsmobile GMC Truck, Inc. ("Steel City"), on October 9, 1981. GM provided a warranty that it "would repair and adjust defects in material or workmanship that occurred during the first 12 months or first 12,000 miles in which the car was in use." 544 So.2d at 884. However, Steel City was unable to repair certain defects in the car. Tittle sued Steel City, General Motors Acceptance Corporation, and GM, alleging breach of warranties based upon the Magnuson-Moss Warranty-Federal Trade Commission Act, 15 U.S.C. § 2301 et seq. Steel City and GM moved for a summary judgment based upon the statute of limitations. The trial court granted Steel City's and GM's motions, and Tittle appealed to this Court. This Court held that Tittle's state-law and Magnuson-Moss Act claims were subject to the statute of limitations provided in § 7-2-725(2), Ala.Code 1975, which states:
"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered; however, a cause of action for damages for injury to the person in the case of consumer goods shall accrue when the injury occurs."
In Tittle, based on the plain language of the statute, this Court held that "Tittle's warranty does not extend to the future performance of his car. The trial court, therefore, correctly determined that Tittle's cause of action, by statute and by the express terms of his warranty, accrued at the time Steel City delivered the vehicle to him." 544 So.2d at 891. Since that ruling, this Court has consistently held that "[a] *117 warranty extending to future performance of a product guarantees the performance of that product for a stated period of time, in contrast to a warranty to repair or replace, which implicitly acknowledges that a product might not perform, but provides for its repair or replacement if nonperformance in fact occurs." Lands v. Lull Int'l, Inc., 963 So.2d 626, 628 n. 3 (Ala. 2007) (citing Tittle, 544 So.2d at 889). See also Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3, 10-11 (Ala.1997) ("This Court has previously held that the language of an express warranty to repair cannot be construed as a representation that a product is entirely free of defects. Rather than guaranteeing that the product is free of defects, an express warranty to repair anticipates that any defects detected during the term of the warranty will be remedied."(citations omitted)).
The main opinion cites two possible rationales to remove the bar of the statute of limitations prescribed in § 7-2-725. The first is that GM's repair warranty should be viewed as an express warranty that goes to the future performance of the goods, placing it within an exception in § 7-2-725(2). GM, however, did not warrant the future performance of the car; instead, it warranted the car against defects in "materials or workmanship." Brown's complaint asserts that "7 ... GMC has breached both warranties as to [Brown]. Said vehicle ... is and has been defective since the date of its purchase by [Brown] ...." Thus, Brown is asserting a defect, not claiming a promise of future performance. A promise to repair defects in the car should not
"be viewed as an independent or separate warranty. Instead, ... such promises `are generally viewed as specifications of a remedy' and ... if the promise to repair `is not fulfilled, then the cause of action is the underlying breach of warranty.' [It is] `a fallacy' the argument that `by failing to remedy its first breach, the defendant committed a second breach, giving rise to a brand new cause of action and starting anew the limitations period.'"
Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 325 (1st Cir.2008) (quoting New England Power Co. v. Riley Stoker Corp., 20 Mass.App.Ct. 25, 477 N.E.2d 1054, 1058 (1985)).
The second rationale offered by the main opinion is that GM's repair warranty is not an express warranty under the Uniform Commercial Code, and so the accrual date in § 7-2-725(2), Ala.Code 1975, does not apply. Section 7-2-313, Ala.Code 1975, states that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and the Official Comment to that Code section states that "[a]lthough this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract." See Pack v. Damon Corp., 434 F.3d 810, 814 (6th Cir.2006)(holding that under Michigan law a repair-or-replace warranty extended by a remote manufacturer is an express warranty under Michigan's version of the Uniform Commercial Code). Contrary to Brown's assertions, GM's express warranty relates to the quality of the goods. GM promised to repair defects in "materials or workmanship," in other words, defects affecting the quality of the goods as manufactured and delivered. This Court has treated manufacturer's repair warranties as express warranties *118 under the Uniform Commercial Code. See generally Ex parte GMC, 769 So.2d 903 (Ala.2000); Rhodes v. General Motors Corp., 621 So.2d 945 (Ala.1993); and Volkswagen of America v. Dillard, 579 So.2d 1301 (Ala.1991).
Section 7-2-725(1) provides that the statute of limitations for the "breach of any contract for sale" is four years from the date of the accrual of the cause of action. Section 7-2-725(2) specifically provides that "[a] breach of warranty occurs when tender of delivery is made, except... where a warranty explicitly extends to future performance of the goods ....," which is not the case here.
The main opinion also notes that many manufacturers now offer warranties in excess of four years and, therefore, that the current state of the law creates a situation in which an automobile manufacturer may offer consumers a warranty that is partially unenforceable because the term of the warranty extends beyond the applicable statute of limitations. Section 7-2-725(1) specifically provides that "the parties may reduce the period of limitation to not less than one year but may not extend it." Therefore, based on the plain language of the statute, this Court has consistently affirmed the principle that
"[u]nder § 7-2-725(2), a cause of action for breach of warranty accrues when the seller tenders to the buyer the goods made the basis of the warranty. Once the cause of action accrues, the statute provides a four-year limitations period in which the buyer may file suit, subject to [two exceptions] ...."
Tittle, 544 So.2d at 887-88. Under the statute, the parties are without the authority to extend the limitations period beyond four years.
This Court has stated:
"`Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"
Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)). The main opinion, however, argues that the plain-meaning application of § 7-2-725 in Tittle creates a harsh result when a automobile manufacturer offers a warranty of longer than four years and, therefore, that that application would not be "fair or logical, or what the legislature intended" in such a case. 14 So.3d at 110.
It is not the function of this Court to "improve" statutes. If the legislature would today offer a different statute, then it is the function of that body to do so by amendment, and not ours to do so by judicial revision. Nor is the plain meaning of the statute to be reformed by our judgment as to what we deem to be fair. This Court has stated:
"There is clearly a `rational' way to view the words of the Legislature. It may not reflect a policy that the members of this Court would adopt, but that is an entirely different matter. If the Legislature intends this statute to be applied in a different manner, the Legislature may correct the statute in its own way and its own time."
Pitts v. Gangi, 896 So.2d 433, 436 (Ala. 2004). See also Simcala, Inc. v. American Coal Trade, Inc., 821 So.2d 197, 203 (Ala. 2001) ("If adverse effects on market conditions warrant a different result [than that demanded by a plain-meaning interpretation,] it is for the Legislature, not this *119 Court, to amend the statute."); and Folmar & Assocs. LLP v. Holberg, 776 So.2d 112, 118 (Ala.2000) ("While there may be valid policy arguments for extending the Act ... `it is not for the Judiciary to impose its view on the Legislature.'" (quoting Ex parte T.B., 698 So.2d 127, 130 (Ala.1997))). This Court's holding in Tittle is based upon the plain meaning of § 7-2-725, Ala.Code 1975.[9]

II.
Justice Lyons, in his writing concurring in the result, would have this Court hold that the trial court erred in entering a summary judgment in favor of GM because, Justice Lyons writes, GM waived its statute-of-limitations defense by not asserting it in its initial pleading. The record indicates that after Brown filed his complaint, GM moved for dismissal pursuant to Rule 12(b)(6), Ala. R. Civ. P., but did not raise the statute of limitations in that motion, and the trial court denied the motion. GM answered the complaint with a general denial and did not raise any affirmative defenses. This Court has stated:
"The statute of limitations is specifically listed as an affirmative defense in [Rule 8(c), Ala. R. Civ. P.]; and the rule requires that it be specially pleaded. Once an answer is filed, if an affirmative defense is not pleaded, it is waived. Robinson v. Morse, 352 So.2d 1355, 1357 (Ala.1977). The defense may be revived... if the defense appears on the face of the complaint (cf., Sims v. Lewis, 374 So.2d 298, 302 (Ala.1979); and Williams v. McMillan, 352 So.2d 1347, 1349 (Ala. 1977))."
Wallace v. Alabama Ass'n of Classified Sch. Employees, 463 So.2d 135, 136-37 (Ala.1984).
Based on the holding in Wallace, Brown argues that GM waived the affirmative defense of the statute of limitations. GM argues that the defense is revived because, it says, the defense appears on the face of the complaint. In support of this argument, GM points to paragraph 4 of the complaint, which states "[o]n or about, to-wit, the 3rd day of August, 2002, the Plaintiff, Troy Brown, purchased one (1) 2002 Chevrolet Corvette from Bill Heard Chevrolet..., said automobile having been manufactured by the Defendant, [GM]." The complaint was filed on August 8, 2006, more than four years after the date of purchase alleged in the complaint.
*120 Brown argues that the statute-of-limitations defense does not appear on the face of the complaint because the words "on or about" and "to-wit" precede the date of purchase, thus making the date of delivery uncertain. Brown cites Lewis v. Merrill, 228 Or. 541, 365 P.2d 1052 (1961), in support of his argument. In Lewis, the Oregon Supreme Court considered whether the plaintiff had waived the statute of limitations by asserting the defense in a reply to a counterclaim rather than demurring to the counterclaim. The court held that "an allegation that something occurred "on or about' a certain day, is not an averment that it occurred on any distinct day or time.... [A] demurrer to the complaint based on the statute of limitations would not lie because it did not appear on the face of the complaint when the right of action accrued." Lewis, 228 Or. at 543-44, 365 P.2d at 1053.
There is no Alabama caselaw that directly addresses the statute-of-limitations defense in this situation. This Court has recognized that the use of the words "on or about" and "to-wit" can create uncertainty as to the time stated in a pleading. See Atchley v. Wood, 255 Ala. 227, 229, 51 So.2d 705, 706 (1951) ("A videlicet means on or about the day specified. When it is so alleged, the evidence need not prove the date strictly as laid. It shows an express purpose to leave the matter of time uncertain." (citations omitted)); Nelson v. Cutter Boat & Motor Co., 260 Ala. 648, 72 So.2d 86 (1954); Williams v. Shows, 187 Ala. 132, 65 So. 839 (1914); Great Atlantic & Pacific Tea Co. v. Crabtree, 230 Ala. 443, 161 So. 508 (1935); and Pollack v. Gunter & Gunter, 162 Ala. 317, 50 So. 155 (1909). However, these cases were decided at a time when Alabama followed the strict rules of common-law pleading, where any variation between the dates in a pleading and the evidence could be fatal to a plaintiff's case. Therefore, the use of "on or about" was a way to prevent prejudice to a plaintiff from minor inaccuracies in the pleadings when the precise time of an event was not material to the case.[10]See Committee Comments on 1973 Adoption of Rule 9, Ala. R. Civ. P. ("In existing Alabama practice a videlicet is used in order to prevent prejudice from inaccuracies. For example, see Nelson v. Cutter Boat & Motor Co., 260 Ala. 648, 72 So.2d 86 (1954).").
Although Brown here prefaced his identification of the date of the purchase with the words "on or about" and "to-wit," the date actually listed falls outside the time allowed by the statute of limitations for the commencement of the action. The date Brown specified in the complaint is the one on which GM is entitled to rely for statute-of-limitations purposes. If it happened that that date were incorrect, Brown could have offered substantial evidence of a later date and thereby presented a question of material fact that would preclude a summary judgment.[11]
*121 Brown cannot rely on the words "on or about" and "to-wit" to relieve him of his representation of the date that he chose and that to all appearances is correct. The statute-of-limitations defense survives because "the defense appears on the face of the complaint." Wallace v. Alabama Ass'n of Classified Sch. Employees, 463 So.2d at 136. Therefore, I would affirm the trial court's judgment on this issue as well.
Because Brown does not demonstrate a genuine issue of material fact to overcome GM's affirmative defense of the statute of limitations or a sufficient basis on which Tittle should be overruled, I respectfully dissent.
NOTES
[1] Brown voluntarily dismissed claims of revocation of acceptance and breach of implied warranties of fitness and merchantability.
[2] Section 7-2-725(1) provides:

"(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it."
[3] In Count I of his complaint, Brown seeks monetary damages and other relief based on the following allegations:

"7. ... [GM] has breached both warranties as to [Brown]. Said vehicle ... is and has been defective since the date of its purchase by [Brown], and said vehicle is and has been since the date of its purchase the subject of numerous and repeated defects in material and workmanship. Said vehicle is not reliable or dependable, has broken down repeatedly, and is subject to both safety and driveability defects. Despite being given numerous opportunities to cure the same by its authorized dealers and/or service centers, [GM] has been unable to do so. By reason of said defects, said vehicle is dangerous and/or unreliable when driven in its normal or usual manner on those occasions when it can be driven at all.
"8. By reason of the foregoing, said warranties have failed of their essential purpose.
"....
"10. As a proximate and direct consequence of the breach of said warranties [Brown] has been damaged, in that said vehicle is so substantially less valuable than warranted as to be worthless. [Brown] has also suffered incidental and consequential damages resulting from said breach and from the failure of said warranties in their essential purpose."
In addition, in Count V of his complaint, Brown asserts a claim under Alabama's "lemon law," Ala.Code 1975, § 8-20A-1(1), alleging, in part, as follows:
"26. [The] vehicle has, since the time of purchase by [Brown], been periodically out of service and in the custody of authorized dealers or repair facilities of the Defendant, [GM], due to repair attempts, one of which occurred during the Lemon Law Rights period, for a cumulative total in excess of 30 calendar days.
"27. [The] vehicle, since the time of purchase by [Brown] has been the subject of at least one non-conforming condition that was the subject of repair attempts three or more times, one of which accrued during the Lemon Law Rights period."
[4] Brown contends that Tittle essentially recognized a type of warranty that does not exist in the law, i.e., a "repair" warranty, as opposed to a "performance" warranty as contemplated by § 7-2-313(1).
[5] Justice See in his dissent states that, under § 7-2-725(2), "the parties are without the authority to extend the limitations period beyond four years," and that it is "not the function of this Court to `improve' statutes." 14 So.3d at 118. By our decision, however, we are not extending the limitations period beyond the statutory four-year period. Rather, we merely recognize that the "warranty," or contractual language, at issue here is such that the accrual of that four-year period does not commence on the date of tender of delivery of the good.

Although the contractual language at issue makes some use of the term "warranty," and although the trial court, the parties, and even this Court, for ease of reference, have referred to this language as "warranty" language, the essence of Brown's argument  both to the trial court (in response to GM's motion for a summary judgment) and to this Court (as described in the foregoing three paragraphs of the text)  is that this language does not qualify as a true warranty under § 7-2-313. (Even the language in a true warranty, however, is language of a "contractual" nature.)
Of course, the threshold and fundamental position taken by Brown throughout this litigation is that Tittle was wrongly decided and that, given the particular "warranty" language at issue and the other facts presented, Brown's cause of action could not logically be viewed as accruing on the date of tender of his automobile. It is our agreement in the first instance with this fundamental proposition that compels our reversal of the trial court's judgment.
[6] An alternate definition of "defect" could simply refer to a breakage that does not occur until after delivery of the vehicle; this would not change my analysis of GM's obligation under the provision.
[7] The warranty provision at issue in Tittle is not quoted in that case; the operative provision is merely paraphrased by the Court: "This writing [the new-car warranty] provided that Steel City ... would repair and adjust defects in material or workmanship that occurred during the first 12 months or first 12,000 miles in which the car was in use." Tittle, 544 So.2d at 884.
[8] Just as the use of the "formal words" "warrant or guarantee" are not required to create an express warranty, see Ala.Code 1975, § 7-2-313(2), the use of the word "warranty" does not necessarily create such a warranty. See Enterprise-Laredo Assocs. v. Hachar's, Inc., 839 S.W.2d 822, 831 (Tex.App.1992) ("the use of form words such as `warranty' or `guarantee' [does] not automatically create an express warranty").
[9] The main opinion suggests that it is "not extending the limitations period beyond the statutory four-year period" but is "merely recogniz[ing] that the `warranty,' or contractual language, at issue here is such that the accrual of that four-year period does not commence on the date of tender of delivery of the good." 14 So.3d at 112 n. 5. The main opinion also states: "Under the contractual language at issue in this case, we agree with Professor Lawrence that the `sounder approach' is to consider that language as a promise to repair the goods in the event a defect occurs." 14 So.3d at 112. Thus, the main opinion treats GM's alleged breach of the "promise to repair the goods in the event a defect occurs" as a breach-of-contract claim independent of the breach-of-warranty claim. This allows Brown's cause of action to run from GM's alleged breach of the promise to repair instead of from the date of delivery of the goods as is provided in § 7-2-725(2), Ala. Code 1975 ("A breach of warranty occurs when tender of delivery is made, except ... where a warranty explicitly extends to future performance of the goods ...."). I disagree. This contract is a warranty. The "contractual language" that gives rise to the promise discussed by the main opinion is found in the "2002 General Motors Corporation New Vehicle Limited Warranty" section of the owner's manual. Moreover, Brown did not allege in his complaint that GM had breached the sales contract. He alleged, instead, that GM had breached both the new-vehicle warranty and the extended warranty. See also 14 So.3d at 109 n. 3.
[10] Modern "notice pleading" rules have achieved the same effect of preventing prejudice from such minor inaccuracies.
[11] The practice that "a videlicet is used in order to prevent prejudice from inaccuracies" and the opportunity to demonstrate that the date stated in the complaint is not the actual date are consistent in their effects.

In his writing concurring in the result, Justice Lyons argues: "We are not permitted to disregard the limiting phraseology in Brown's complaint lest we run afoul of the rule that allegations of the complaint are to be construed in a light most favorable to the plaintiff, with all doubts and allegations resolved in his favor." 14 So.3d at 116 (Lyons, J., concurring in the result). I do not believe that the policy of reading the complaint in a light most favorable to the plaintiff requires us to read out of the complaint the date chosen by the plaintiff, nor do I consider it somehow unfair to require the plaintiff, if he maintains that he was mistaken as to the date he chose, to present substantial evidence of another date. See Slaney v. International Amateur Athletic Fed'n, 244 F.3d 580, 597 (7th Cir. 2001) ("[T]he court is not required to ignore facts alleged in the complaint that undermine the plaintiff's claim.").